## Adams Express Company v. Commonwealth.

(Decided February 27, 1917.)

## Appeal from Perry Circuit Court.

1.  Intoxicating Liquors—Indictment Against Carrier for Delivery of in Violation of Law.—An indictment against a carrier for the delivery of liquor in violation of section 2569b of the statutes was sufficient, although it charged that the delivery was made in a county where the local option law was in force when, in fact, the sale of liquor was prohibited by a special act.

2.  Intoxicating Liquors—Prosecution of Carrier Under Section 2569b of Statutes—Evidence May Cover Year or One Act.—In a prosecution against a carrier for delivering liquor in violation of section 2569b of the Statutes where there have been several deliveries to the same consignee within the year, the Commonwealth may, under one indictment, cover the entire year and secure a conviction on any one of the violations, or it may elect to single out one violation.

3.  Intoxicating Liquors—Prosecution of Carrier Under Section 2569b of Statutes—Evidence May Cover Year or be Confined to One Act. —If there are several alleged violations of the law within the year, and the Commonwealth confines the evidence and instructions to any one of these acts, a judgment will not be a bar to other prosecutions for like violations during the year. But if the evidence or the instructions cover the year, the judgment will bar other prosecutions for like offenses during the year.

4.  Intoxicating Liquors—Prosecution Against Carrier for Violation of Section 2569b—Scope of Evidence.—In prosecutions for a violation of this statute it is permissible for the Commonwealth to show by every pertinent fact and circumstance within its reach that the agent who delivered the liquor had information before doing so that it was not intended for personal use.

5.  Intoxicating Liquors—Personal Use—Statute Not Intended to Interfere With.—This statute was not intended to interfere with the carriage or delivery of liquor for personal use. Its purpose was to forbid the carriage to or delivery in prohibited territory of liquor intended to be sold in violation of law.

6.  Intoxicating Liquors—Liability of Carrier for Delivery of in Violation of Law—Effect of Statement on Package That it is for Personal Use.—The fact that there is on the package containing the liquor the declaration that it is intended for personal use will not protect the carrier if it has such information as would lead a person of ordinary prudence to believe the statement was false, and in fact it was false.

7.  Intoxicating Liquors—Meaning of Word "Knowing" in Statute.— The word "knowing" in the statute means having such information as would put a person of ordinary prudence on notice that the statement was false.

8. **Intoxicating Liquors—Evidence Must Show Falsity of Statement That Liquor is Intended for Personal Use.**—To sustain a conviction there must be some evidence that the agent had such information as would put a person of ordinary prudence on notice that the statement was false and some evidence that it was in fact false.

9. **Intoxicating Liquors—Evidence Against Carrier For Delivery of in Violation of Law—Sufficiency of.**—It is not necessary to secure a conviction that the Commonwealth should show that the liquor was used in violation of law.

10. **Intoxicating Liquors—Prosecution Against Carrier for Delivery of in Violation of Law—Instructions.**—In prosecutions under this statute the jury should be instructed that the statement that the liquor was intended for personal use was known to the carrier to be false and was in fact false, and that the word "known" means the possession of such information as would put a person of ordinary prudence on notice that the statement was false.

LAWRENCE MAXWELL, JOSEPH S. GRAYSON and WOOTTON & MORGAN for appellant.

M. M. LOGAN, Attorney General, and D. O. MYATT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This case comes here on the appeal of the Adams Express Company from a judgment assessing a fine against it of $150.00 for a violation of section 2569b of the Kentucky Statutes. The indictment under which the conviction was had was returned by the grand jury in March, 1916, and charged that: "The said Adams Express Co., on the 9th day of March, 1916, in the county aforesaid, a territory in which the local option law is now in force, did unlawfully as a common carrier, transport and deliver to Russell Jones, vinous, malt, brewed, fermented, spirituous and intoxicating liquors in packages which it had received and agreed to carry and deliver for hire, and which packages had on the outside thereof the statement that such liquors were for the personal use and family use of the consignee, Russell Jones, when at said time said statement was false and such liquors were not for the personal and family use of the said Russell Jones, and when at said time the said Adams Express Company knew that said statement was false and knew that such liquors were not for the personal or family use of the said Russell Jones."

The only witness introduced on the trial was L. B. Smith, agent of the Adams Express Company at Krypton, who testified for the Commonwealth. This agent said that he knew Russell Jones and on April 1, 1915, there was delivered to Jones as consignee by him as the agent of the company one gallon of whiskey. That there were delivered to Jones on May 29, 1915, two packages of whiskey, one containing three gallons, the other one gallon. That on July 14, 1915, there were delivered three gallons of whiskey to him. That on August 11, 1915, there were delivered to him three gallons of whiskey, and that on August 29, 1915, two packages of whiskey containing one gallon each were delivered to him, making a total from April 1, 1915, to August 29, 1915, of thirteen gallons.

This witness was further asked and answered: "Q. Mr. Smith, are you very well acquainted with Russell Jones? A. Not personally; I only know him when I see him. Q. Do you know whether or not he is a liquor dealer? A. No, I don't know it. Q. Did you have any information, at the time you made these deliveries, that Russell Jones was a liquor dealer? A. No, I had no outside information, more than the amount of whiskey that he had received. Q. Have you testified in these cases against Russell Jones for having liquor in his possession for the purpose of sale? A. Yes. Q. I will ask you if Russell Jones has not been convicted in this court for having liquor in his possession for the purpose of sale? A. I don't know that he has. I think he has, though; yes. . . . . Q. How were these packages labeled? A. They were labeled: 'For personal use.' Q. At the time you were delivering to Russell Jones these various packages of whiskey, did you know whether it was straight whiskey or what it was? A. No more than the package showed—marked—what it was. Q. Straight whiskey? A. Yes. Q. Were these packages marked straight whiskey? A. Yes. Q. At the time you delivered these packages, did you, or not, know that he was not using all of this whiskey for personal use? A. Well, as to being positive about it, I can't say. I didn't buy any liquor from him or know of anybody buying it, but my opinion was that he was selling it. That he wasn't using it. Q. At the time you delivered it? A. Yes. Q. Why did you deliver it to him then? A. I didn't think I should presume too far on it. Q. You had no

evidence whatever that he was engaged in the sale of liquor, did you? A. No, sir. Q. Did you know where he lived? A. Somewhere in Leslie county, I understand. Q. Did you have any evidence whatever that he was engaged in the sale of liquor? A. No evidence whatever. Q. Your answer to the court's question was merely your own suspicion, wasn't it? A. Yes. . . . . Q. Were each and all of the packages that you delivered to him, that you told about in your evidence, marked 'For personal use?' A. Yes. Q. Did each of those packages show from whom that whiskey was shipped? A. Yes. . . . . Q. But you hadn't been in court as a witness against Jones before you delivered him this whiskey, had you? That you have testified about? A. I can't say. I have testified against him in different cases. Q. What I mean is this: You say you testified against him here in May or March. A. Maybe both. Q. Now this indictment against the Adams Express Company that you are testifying in now, was returned at the March term. Now you had never been a witness against him before May, 1916, in open court here? A. Yes, I believe I was. Q. What term? A. I am not sure whether it was the March term or not, but I had been a witness against him before the May term. Q. You never knew or heard of any judgment against him for selling liquor, did you? A. No, sir. Q. And you never had any direct information from any source that he was selling whiskey, did you? A. No, sir. Q. You are the agent of the Adams Express Company at Krypton? A. Yes. Q. Do you have any written instructions from the Adams Express Company relative to the shipment and delivery of whiskey? A. Yes. Q. Tell the jury whether or not you have a written instruction not to deliver whiskey to any person that you know to be a liquor dealer. A. I don't remember just how those instructions read, but I remember that's the spirit of it, to not deliver to liquor dealers, if we know them to be liquor dealers. . . . . Q. Now you told the Commonwealth's Attorney that you kept a book in your office. Have you got that book there? A. Yes. Q. Do you have each person to whom you deliver whiskey to sign that book in person? A. Yes. Q. Did you have Russell Jones to do that? A. Yes. Q. He signed in person for each of those packages? A. Yes. Q. And each of them was marked 'For personal use?' A. Yes. Q. Had you testified before, in court,

against Russ Jones for having liquor to sell and then after that, did you deliver to him a package of liquor? A. Yes, I have delivered him whiskey since I have testified, but the last court that I testified against him, I don't think he has received any liquor since. Q. But you did deliver it to him after you testified in some courts back against him? A. Yes. Q. Had you testified against him before August, 1915? A. Yes. Q. Do you know what charge was against him? A. Well, I think it was for having liquor in his possession for the purpose of sale.''

The statute under which the indictment was found is an act of 1914, now section 2569b of the Kentucky Statutes. This statute provides, in section 2, that: ''It shall be unlawful for any person to consign, ship or transport in any manner whatsoever, or deliver any of the liquors mentioned in section 1 of this act to any person in any county, district, precinct, town or city where by law sale of such liquors is prohibited, or for any person residing in such prohibited territory to receive any such liquors, unless there appears upon the outside of the package containing any such liquors, except such as may be received by distillers, brewers, or wholesale liquor dealers, the following information: Name and address of the consignee, and the statement either that such liquors are for personal and family use of the consignee, or for medicinal, mechanical, chemical, scientific or sacramental purposes. Any consignee accepting or receiving any package containing such liquors upon which appears a false statement, or any person consigning, shipping, transporting or delivering any such package, knowing that said statement appearing upon the outside thereof is false, shall be deemed guilty of violating the provisions of this act.''

Particular attention should here be directed to the last sentence in this section, which makes it a violation of the act for any person to deliver a package marked in the manner described in the section ''knowing that said statement appearing on the outside thereof is false.'' And it will be observed that the indictment charged that the express company, with knowledge that the statement on the packages of liquor, that it was for the personal use and family use of the consignee, Jones, was false, delivered the liquor to him. It is not, however, necessary that the agent should have actual or personal knowledge that the statement was false. The

word "knowing" in the statute means having such information as would put a person of ordinary prudence on notice that the statement was false. Goodman v. Commonwealth, 169 Ky. 542. And when a carrier, through its agent, has this character of notice and makes a delivery, it does so at its peril. The agent in charge of the business cannot close his eyes or his ears to what is going on about him. It will avail him little to say that he relied on the statement on the package that it was for personal use or believed the shipment was for personal use when the facts and circumstances brought home to him show that a person of ordinary prudence, in good faith trying to observe the law, could not have so believed. Our opinion is that the evidence was amply sufficient to show that the statement that the liquor was for personal use was false and that the agent, before delivering these packages, had sufficient information to put a person of ordinary prudence on notice that none of them was intended for the personal use of the consignee, and, therefore, the court did not commit error in refusing to take the case from the jury.

Another ground relied on for reversal is that the indictment was fatally defective in failing to charge that the sale of liquor was prohibited in Perry county. It did charge that the local option law was in force in that county, but it is said this averment was not sufficient to show that the sale of liquor was prohibited, because while the local option law is a general law in force throughout the state it only becomes operative in that territory in which it may be put in effect by a vote of the people. The fact is that the sale of liquor in Perry county was prohibited by a special act of the legislature passed in 1883, which is yet in force, and not by a vote had under the local option law, and the indictment, in place of charging that the local option law was in force, should have charged that the sale of liquor was prohibited by law in Perry county, or that it was unlawful to sell intoxicating liquor in Perry county. An averment like this would have been sufficient without making any mention of the legislative act under which the sale of liquor was prohibited, as the court takes judicial notice of this character of legislation. Reed v. Commonwealth, 171 Ky. 225.

It will thus be seen that the indictment was not aptly drawn, but it sufficiently apprised the express company

of the nature of the offense it would be called on to answer. It could not fail to know from this indictment the precise accusation against it, and we have long since declined to hold indictments fatally defective because they did not comply with some technical requirement. Overstreet v. Commonwealth, 147 Ky. 471; Commonwealth v. McGarvey, 158 Ky. 570; Drury v. Commonwealth, 162 Ky. 123.

The next objection relates to the alleged incompetency of certain parts of the evidence of Smith, the agent of the express company, developed during his examination for the purpose of showing that notice had been brought home to him that the liquor consigned and delivered to Russell Jones was not intended for personal use, although the markings on the packages so stated. We think all of his evidence was competent.

It will be noticed that the evidence for the Commonwealth covered the entire year preceding the finding of the indictment. The attorney for the Commonwealth did not elect, as he might have done, to confine the evidence to a single transaction but saw proper, as he had the right to do, to inquire as to all shipments of liquor to Jones during the year preceding the time of the finding of the indictment. And when the Commonwealth elects to do this on the trial of an indictment, a judgment of conviction or acquittal will bar pending or subsequent prosecutions for a like offense that may have occurred during the year. The Commonwealth may also, if it chooses, single out one or more of any number of like offenses committed during the year, and if in the examination of the witnesses the evidence is confined to the specific act or acts and the instructions of the court limit the jury to their consideration, a judgment of acquittal or conviction will not be a bar to other pending or subsequent prosecutions for like violations during the year. Shirley v. Commonwealth, 143 Ky. 183.

As the evidence and instructions covered the year, and there were several deliveries within the year to Jones, the jury would be authorized under proper instructions to find the defendant guilty if they believed it had violated the statute in any one of the deliveries described in the evidence, and in reaching this conclusion would have a right to consider and give such weight as they thought proper to the effect of these several deliveries in bringing home to the agent notice that the liquor was not being obtained for personal use.

It is, however, earnestly insisted that it was error to show, or attempt to show, by the agent that previous to the deliveries, or some of them, he knew or had information that Jones had been convicted under an indictment charging him with having liquor in his possession in prohibited territory for the purposes of sale; the argument being that the conviction of Jones, if he was convicted of this offense, could be shown only by the records of the court in which the conviction was had.

We think counsel misconceives the purpose of this evidence. It was not admitted for the purpose of affecting Jones, who might well have complained of its admission had he been on trial. It was offered for the sole purpose of showing, so far as it did show, that the agent had notice that the liquor was not intended for personal use, and it was admissible for this purpose.

In prosecutions for a violation of this statute it is permissible for the Commonwealth to show by every relevant and pertinent fact and circumstance within its reach that the agent who delivered the liquor had information before doing so sufficient to put a person of ordinary prudence on notice that the liquor was not intended for personal use, notwithstanding the declaration on the package that it was. For example, it would be competent to show that the agent had been informed within a reasonable time before the delivery complained of that the consignee was a "bootlegger," or that he was engaged in unlawful traffic in intoxicating liquors, or that his reputation was that of a "bootlegger," or that he had been arrested or convicted for violation of the liquor laws. And for the same purpose it would be competent to show the number of packages of liquor received by the consignee and the quantity in each; but of course evidence of this nature should be confined to a reasonable period preceding the date of the transaction, or transactions, under investigation.

This statute was not designed to interfere with the carriage or delivery of liquor for personal use. The legislature in its enactment recognized, as it had recognized in many previous enactments, the right of a citizen to purchase, where its purchase was authorized, liquor for his personal use, and to have it delivered to him for such use in territory where the sale of or traffic in intoxicating liquor was forbidden. And so the carrier that transports liquor from places in or out of the state

where its sale is authorized, may deliver it to a consignee who obtains it for his personal or family use; but this is the extent of its legal right to deliver liquor in prohibited territory.

The sole purpose of the statute was to aid in the enforcement of prohibitory liquor laws by forbidding the carriage of liquor or its delivery in such territory to persons who might sell or traffic in it in violation of law. To accomplish this commendable purpose the legislature has surrounded the importation of liquor into dry territory with every safeguard that could reasonably be devised, and has put upon the carrier the duty of exercising such care as a person of ordinary prudence would exercise to know that the liquor is not carried for or delivered to persons who will use it in violation of law.

The mere fact, that there is on the package containing the liquor the statement that it is intended for personal or family use, will not in and of itself protect the carrier or authorize either its carriage or its delivery, if it was in possession through its agent of such information as would lead a person of ordinary prudence to believe the statement was false, and in fact it was false. It will be guilty of a violation of law, notwithstanding the statement, if there is sufficient evidence, circumstantial or direct, to show that the agent had the described information and that the statement was in fact false. American Express Co. v. Commonwealth, 171 Ky. 1.

We cannot, of course, undertake to set down the precise quantity of information the carrier or its agent should have, or the sources from which it must be derived, before it will be justified in refusing to deliver it. The weight of such evidence and its sufficiency to sustain a conviction must necessarily depend on the facts and circumstances of each particular case and be left to the sound discretion of the court or jury trying the case.

The instructions, which are complained of, read as follows: "No. 1. If you shall believe from the evidence in this case, beyond a reasonable doubt, that the defendant, Adams Express Co., in Perry county, Kentucky, and before the finding of the indictment herein and within twelve months of that time, was a common carrier for hire, and that within twelve months of the finding of the indictment shipped or transported into Perry county, Kentucky, at Krypton, a county where, by law, the sale as a beverage of vinous, malt, brewed, spirit-

uous and intoxicating liquors is prohibited, and shall further believe from the evidence, beyond a reasonable doubt, that the defendant at Krypton, in said Perry county, had within twelve months of the finding of the indictment, through its agent, L. B. Smith, delivered to Russell Jones, vinous, brewed, fermented, spirituous or intoxicating liquors, upon which liquors, or the package containing it, there was a statement that such liquors were for the personal use of the consignee, and shall further believe from the evidence beyond a reasonable doubt that the said statement appearing upon the outside of said liquors or the package containing it, that the said liquors were for the personal use of the consignee, was known to the defendant to be false, it will be your duty to find the defendant guilty, and fix its punishment at a fine of not less than fifty nor more than two hundred dollars.

"No. 2. The court further instructs the jury that the law imposes no duty upon the defendant, Adams Express Co., or its agent, L. B. Smith, to make it a business to inquire into such things, but only that if he (the agent), knows or incidentally has such information as would make him believe the liquors were intended for sale contrary to law, and unless you shall believe from the evidence beyond a reasonable doubt that L. B. Smith, agent of the defendant at Krypton station knew or incidentally had such information as made him believe the said liquors delivered to said Russell Jones were intended for sale, contrary to law, then the defendant is not guilty, and the jury will so find.

"No. 3. If the jury have a reasonable doubt of the defendant having been proven guilty, they will find it not guilty."

Instruction No. 1 authorized the jury to find the express company guilty if they believed the statement appearing on the packages, that the liquors were for the personal use of the consignee, was false and known to be so by it. In other words, under the instructions the guilt or innocence of the express company was to be determined entirely by the knowledge or lack of knowledge on the part of its agent concerning the use for which the liquor was intended. If, in the opinion of the jury, he had such information as would put a person of ordinary prudence on notice that the statement, that the liquors were for personal use, was false, then the jury

under the instruction had the right to find a verdict of guilty, although, as a matter of fact, the statement was not false and the liquors were intended for personal use. This was prejudicial error. The liability of the carrier primarily depends on whether the statement that the liquor is intended for personal use is false. If it is true, the carrier commits no offense in delivering it. The essential things the Commonwealth must show are, that the statement was false, and that its falsity was known to the agent of the carrier, or could have been known to him by the exercise of ordinary prudence.

The falsity of the statement is by the very words of the statute a necessary ingredient in making out the offense, because if the statement is not false, the carrier has not committed any violation of law. If the statement is true and the liquor is in fact intended for personal use, obviously the carrier is protected in receiving, transporting and delivering it, notwithstanding the fact that there might be evidence to show that its agent had sufficient information to put a person of reasonable prudence on notice that it was not intended for personal use. We think the prejudicial error in the instruction may be demonstrated by an illustration. Suppose that under an indictment like the one here in question the Commonwealth introduced evidence reasonably sufficient to show that the agent who delivered the whiskey had information sufficient in the opinion of the jury to give notice to a person of ordinary prudence that it was not intended for personal use, and after this there was uncontradicted and convincing evidence showing beyond a reasonable doubt that the whiskey was in fact used by the consignee for his personal use, could anybody be heard to say that the carrier should be punished for delivering it? We think not. And yet if the argument for the Commonwealth is sound and the inquiry was limited solely to the information in the possession of the agent, a conviction would necessarily follow, notwithstanding the undisputed fact that the law had not been violated.

Our construction of the statute will not, as apprehended by counsel, impair at all its efficiency. On the contrary, it will broadly and liberally carry out its purpose. The Commonwealth will not be obliged in making out its case to show that in fact the liquor was used for illegal purposes or to show what disposition the consignee made of it. The same quantity of evidence

that would satisfy the jury that the agent knew or had the character of information we have described that the statement was false, should also satisfy them that it was false, in the absence of evidence that it was truthful. When the Commonwealth, as in this case, introduces evidence conducing to show beyond a reasonable doubt that the agent who delivered the liquor had such information as would put a person of ordinary prudence on notice that it was not intended for personal use, it may rest its case and on this evidence, if unrebutted, the jury, under proper instructions, may find, if they see proper to do so, that the agent in delivering the package had such information as would put a person of ordinary prudence on notice that the declaration was false, and that it was in fact false.

The Commonwealth, however, need not rest its case on evidence of notice to or the information in possession of the agent. It may, if it desires, introduce other evidence tending to show the unlawful disposition made of the liquor, and, likewise, the carrier may offer such evidence as it desires tending to show not only that its agent did not have the required notice or information but that the declaration on the package was in fact not false. In short, evidence of information in the possession of the agent, that would put a person of ordinary prudence on notice that the declaration was false, would of itself be sufficient to warrant the jury in finding that it was in fact false, as well as in finding that the agent had the required notice, assuming that there should be no evidence establishing that the declaration was true. If there is evidence on both sides of this issue, the question of course would yet be for the jury.

Accordingly, we think that in instruction No. 1, the words "was in fact false" should have been inserted after the words "and was known to the defendant to be false," so that the latter part of this instruction would have read, "and shall further believe from the evidence beyond a reasonable doubt that the said statement appearing on the outside of said liquor or the package containing it, that the said liquor was for the personal use of the consignee, was known to the defendant to be false and was in fact false, it will be your duty to find the defendant guilty, and fix its punishment at a fine of not less than fifty nor more than two hundred dollars. The word 'known' means such information as would put

a person of ordinary prudence on notice that the statement was false.''

In place of instruction No. 2 the following instruction should be given: ''Unless you believe from the evidence beyond a reasonable doubt that L. B. Smith, agent of the defendant at Krypton station, did have such information as would put a person of ordinary prudence on notice that the statement on the packages, or any of them, was false, and also that it was, in fact, false, you will find the defendant not guilty.''

Wherefore, the judgment is reversed, with directions for a new trial in conformity with this opinion.