## Adams Express Company v. Commonwealth.

(Decided October 16, 1917.)

### Appeal from Perry Circuit Court.

1. Intoxicating Liquors—Offenses—Question for Jury—Evidence.— In a prosecution under section 2569b, Kentucky Statutes, against a carrier for delivering liquor in local option territory, evidence that liquors were delivered in such quantities and with such frequency as-to put an ordinarily prudent person on notice that they were not intended for personal use, was sufficient to take the case to the jury and to support its verdict.

2. Intoxicating Liquors—Offenses—Evidence.—In the prosecution of a carrier under section 2569b, Kentucky Statutes, where deliveries of liquor were frequent and in large quantities, evidence held admissible to show what information the agent, who delivered the liquor, had, before its delivery, with reference to its disposition by the consignee.

3. Intoxicating Liquors—Trial—Argument of Counsel.—In the prosecution of a carrier under section 2569b, Kentucky Statutes, certain statements of counsel to the jury held to be warranted by the evidence.

4. Intoxicating Liquors—Trial—Argument of Counsel—Instructions. —In the prosecution of a carrier under section 2569b, Kentucky Statutes, where the court sustained objections to a statement of counsel to the jury that the deliveries of liquor by the defendant was causing all the trouble in the court and in the county, and the court admonished the jury not to consider it, the error was cured.

MAXWELL & RAMSEY, LAWRENCE MAXWELL, JOSEPH S. GRAYDON and MORGAN & NUCKOLS for appellant.

CHARLES H. MORRIS, Attorney General, and HENRY F. TURNER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

This is an appeal from a judgment, based on the verdict of a jury, fining the defendant, Adams Express Company, $200.00 under an indictment, charging the company with delivering to Ance White at Chavies, in Perry county, Kentucky, where local option is in effect, a shipment of intoxicating liquor marked as being for personal use, it being alleged in the indictment that the liquor was not intended for the personal use of Ance White and that the company, when it made the delivery, had knowledge of this fact.

The evidence shows that the defendant, by its agent, S. W. Reynolds, during the year preceding May 16, 1916, the date of the finding of the indictment, delivered to Ance White thirty-seven gallons of whiskey, and that each shipment was marked for personal use.

The grounds urged for reversal are: (1) The verdict is not supported by the evidence; (2) admission of incompetent evidence; and (3) prejudicial statements of counsel for the Commonwealth in argument to the jury.

1. The proof shows that from July 12, 1915, to May 13, 1916, the appellant delivered to Ance White, at Chavies, thirty-seven gallons of whiskey; that some of these deliveries were, at the rate of a gallon a day; that from April 5 to April 28, 1916, ten gallons were so delivered, seven of them within eight days and three of them within three days. It was also proved by the company's agent that, because of the frequency of these deliveries, he became suspicious that the liquors were not for the personal use of White and made some inquiries about him; that the reports he received were not very favorable, although he did not state just what the reports were; that he wrote to his superior officer to know whether or not he should make such frequent deliveries, and from him received instructions not to deliver in excess of one gallon a week; and that, thereafter, he followed these instructions. The defendant introduced no evidence to show that the whiskey was for White's personal use.

Upon this evidence, it was unquestionably for the jury to decide whether or not the whiskey delivered to White was for his personal use and, if not, whether the company had knowledge of that fact.

In the recent case of Adams Express Co. v. Commonwealth, 174 Ky. 296, where the facts were almost identical with those in the case at bar, except the aggregate quan-

tity delivered was larger and the deliveries were more frequent in the instant case, this court said:

"It is not, however, necessary that the agent should have actual or personal knowledge that the statement was false. The word 'knowing' in the statute means having such information as would put a person of ordinary prudence on notice that the statement was false. Goodman v. Commonwealth, 169 Ky. 542. And when a carrier, through its agent, has this character of notice and makes a delivery, it does so at its peril. The agent in charge of the business cannot close his eyes or his ears to what is going on about him. It will avail him little to say that he relied on the statement on the package that it was for personal use or believed the shipment was for personal use when the facts and circumstances brought home to him show that a person of ordinary prudence, in good faith trying to observe the law, could not have so believed. Our opinion is that the evidence was amply sufficient to show that the statement that the liquor was for personal use was false and that the agent, before delivering these packages, had sufficient information to put a person of ordinary prudence on notice that none of them was intended for the personal use of the consignee, and, therefore, the court did not commit error in refusing to take the case from the jury. . . .

"The Commonwealth will not be obliged in making out its case to show that in fact the liquor was used for illegal purposes or to show what disposition the consignee made of it. The same quantity of evidence that would satisfy the jury that the agent knew or had the character of information we have described that the statement was false, should also satisfy them that it was false, in the absence of evidence that it was truthful. When the Commonwealth, as in this case, introduces evidence conducing to show beyond a reasonable doubt that the agent who delivered the liquor had such information as would put a person of ordinary prudence on notice that it was not intended for personal use, it may rest its case on this evidence, and if unrebutted, the jury, under proper instructions, may find, if they see proper to do so, that the agent in delivering the package had such information as would put a person of ordinary prudence on notice that the declaration was false, and that it was in fact false."

That the agent, in delivering the liquor to White with the frequency and in the quantities described in the

evidence, had such information as would put a person of ordinary prudence on notice that it was not intended for personal use, is conclusively proved, in the case at bar, by the testimony of the agent, Reynolds, that he became suspicious, made inquiries about White, wrote to the company for instructions in the matter, and was directed not to deliver whiskey to White in the quantities theretofore delivered to him. Clearly, this evidence was sufficient, under the rule as above stated, not only to take the case to the jury, but also to support the verdict of guilt.

2. The evidence admitted over the appellant's objection and exception, which it is insisted was inadmissible, is as follows:

"Q. Do you tell the jury that the frequent shipments of whiskey that this man was receiving, at this station, did not create any impression upon your mind as to whether he was receiving it for his personal use or for the purpose of selling it? A. Well, I supposed that it was for personal use. Q. Then you tell this jury that the frequent shipments of whiskey that he got, amounting to the number of gallons that these shipments did amount to, created no impression upon your mind except the fact that he was receiving it for his personal use? A. I don't know; I don't remember. Q. Don't you know, Mr. Reynolds, that it was your opinion at the time you were delivering these shipments of whiskey to him, that he was engaged in disposing of this whiskey in violation of the law and was not using it all himself? A. I didn't know it. Q. I didn't ask you what you knew. Wasn't it your opinion, at that time, he was disposing of that whiskey in violation of law and not receiving it for his personal use? A. I might have had an opinion like that. I don't remember. Q. Did you try to ascertain from any source whether or not he was selling this whiskey or disposing of it or using it for his own personal use? A. I believe I made inquiries, the best I remember. Q. What kind of information did you receive? A. I don't remember what I received, but the best I remember, finally, after the shipments began to come so often, that is, close together, and I inquired into it, the reports were not very favorable. Q. As to what he was doing with it? A. Yes. Q. And after these reports were not very favorable, didn't you deliver him shipments time and again, and within twelve months of the finding of this indictment? A. I don't think I did. I will explain

one point right here.   When the shipments began to come over one a week, I took up this matter with our superintendent in Cincinnati, for information as to what would be the best to do or the proper thing to do in this case.   My letter went to Cincinnati.   Our attorney at Cincinnati was away for a few days and by the time I received an answer to my letter, he had received several shipments right close together and I didn't know whether to deliver them or to hold them and after I received instructions from our office at Cincinnati, that it would not be best to deliver over one gallon per week, why, immediately, I cut this down, which I would have done if I had had the information—cut it down to one gallon a week; that is what their law requires.   The court: Was it your opinion that any man would use a gallon of whiskey a week, himself?   A. Yes, I have seen lots of men drink over a gallon a week.   The Court:  I am not asking you that.  I am asking you if it was your opinion that this man was using as much as a gallon a week?  A. I don't know.   Q. Mr. Reynolds, the first date that Mr. White received any shipment of liquor was on July 12, and the next date was July 17.   Five days from that first date, he received another shipment.   Did you make any inquiry then?  A. The first shipment that was made?  Q. After the second shipment came in?  A. I don't remember.   Q. I see on September 25th, 1 gallon was received by White and on September 30th, five days later, another gallon was received.   Did you make any inquiry, as to what he was doing with it?  A. I don't remember.  Q. I see on December 9, 1915, he received 1 gallon and on December 10, following, the next day, he received another gallon.   Did that shipment the second time, connected with the shipment on the 9th of December, did that arouse any suspicion in your mind as to what he was doing with that liquor?  A. I don't remember whether it did or not.   Q. On March 21, I see one shipment was made to him of one gallon and on March 23, two days later, another gallon was received.   Did you make any inquiry then, as to what he was doing with this liquor?  A. I made an inquiry, but I don't just remember when it was."

In support of the contention that this evidence was incompetent, counsel for appellant cite the case of American Express Co. v. Commonwealth, 171 Ky. 1, 186 S. W. 887, wherein this court held that it was error to *instruct the jury* that it was the duty of the defendant,

before delivering a package, to use such care as an ordinarily prudent person would use under like or similar circumstances, to ascertain the purpose for which the liquor was to be used, and whether or not the statements on the package were false. It was further held, in that case, that it was not the purpose of this statute to make the agent of the company a detective to pry into and inquire about the contemplated use to which *every package* of liquor which came through his office was to be put, but "it was intended only that the carrier should be liable if its agent should have such knowledge or be in possession of such information as would cause a prudent person to believe that the liquors were intended for sale contrary to law."

That case is, clearly, not applicable to the question now being considered. There, the court was considering instructions to be given; here, we are considering the admissibility of evidence. While, manifestly, it was not proper for the court to instruct the jury that it was the duty of the company's agent to make inquiries or to act the part of a detective, it is an entirely different question whether the agent may be asked as a witness, whether he did make inquiries, to ascertain if, at the time of the deliveries, he had such information about the consignee of the whiskey as to cause him to make inquiries about the propriety of delivering the whiskey to him; and, if he did make inquiries, what information he received. It was entirely proper to permit such questions to be asked and answered, in order to show what information the agent had received about the use which the consignee was making of the whiskey. In the case of Adams Express Co. v. Commonwealth, *supra,* upon the admissibility of evidence upon this same question, this court said:

"In prosecutions for a violation of this statute it is permissible for the Commonwealth to show by every relevant and pertinent fact and circumstance within its reach that the agent who delivered the liquor had information before doing so sufficient to put a person of ordinary prudence on notice that the liquor was not intended for personal use, notwithstanding the declaration on the package that it was. For example, it would be competent to show that the agent had been informed within a reasonable time before the delivery complained of that the consignee was a 'bootlegger,' or that he was engaged in unlawful traffic in intoxicating liquors, or

that his reputation was that of a 'bootlegger,' or that he had been arrested or convicted for violation of the liquor laws. And for the same purpose it would be competent to show the number of packages of liquor received by the consignee and the quantity in each; but, of course, evidence of this nature should be confined to a reasonable period preceding the date of the transaction, or transactions, under investigation.''

It is also insisted that it was error to permit the Commonwealth to ask the agent, ''If Ance White had received liquors consigned to his wife, in addition to those consigned to himself, within the year before the filing of the indictment.'' We think this question, under the circumstances, was permissible, but whether it was or not, when taken in connection with the answer, it was not prejudicial to the defendant, because the witness stated that no such liquors had been delivered to White.

3. The statements made by the Commonwealth's attorney in his argument to the jury, to which objections are urged, are as follows:

''An ordinary prudent man such as I wanted this jury to know he was, and such as Mr. Reynolds is, couldn't help but form an opinion that that man wasn't drinking all that liquor himself.''

''He delivered this liquor down there to Ance White and Ance White sold this liquor, he didn't use it for his personal use; the label on that package was false, and if Mr. Reynolds had any sort of knowledge that this man was engaged in the sale of liquor or wasn't using it for his personal use then this company is guilty.''

''If Mr. Reynolds were qualified to be an agent for the Adams Express Company, if he had a prudent mind, it was his duty to find out what Mr. White was doing with so much liquor.''

Each of these statements seems to us to be warranted by the evidence in the case. Counsel for appellant have not indicated for what reason they are considered objectionable, other than to urge that it was error to permit counsel to say to the jury that it was the duty of the agent to find out what Mr. White was doing with so much liquor. This statement, under the proof here, was entirely justified, because liquor was being delivered to White in such quantities and with such frequency as to put an ordinarily prudent person upon his guard.

The only other statement made by the Commonwealth's attorney in his argument to the jury, to which objection is urged, is as follows:

"But that did not stop there, delivering this liquor that is coming up into your county and causing all the trouble that we have in the court, right here in Perry county, and it was made so by the defendant in this case."

This statement is objectionable, because there is no proof upon which it could be based. But, appellant's objection to this statement was sustained by the court and the jury were admonished not to consider it. This, in our judgment, was all that was required, because there was nothing in the statement that could not have been counteracted by the admonition of the court.

Perceiving no error in the trial of the case, the judgment is affirmed.