## Adams Express Company v. Commonwealth.

(Decided November 27, 1917.)

### Appeal from Perry Circuit Court.

1. Intoxicating Liquors—Indictment Against Carrier—Date of Delivery.—The Commonwealth has a right to show the delivery of

the quantity of liquor specified in the indictment to the consignee named in the indictment at any time within one year before the indictment is found.

2. Intoxicating Liquors—Variance Between Indictment and Evidence.—The Commonwealth must show the unlawful delivery of the quantity of liquor specified in the indictment to the consignee named in the indictment. If there is a material variance between the indictment and the evidence in respect to the name of the consignee or the quantity of liquor delivered, it will, if prejudicial, be fatal to the prosecution.

3. Intoxicating Liquors—Variance—When Not Reversible Error.—A variance between the indictment and the proof will not be reversible error unless it appears that the substantial rights of the carrier were prejudiced by the variation.

4. Intoxicating Liquors—No Limitation on Amount That Carrier May Deliver for Personal Use.—The statute does not limit the amount of liquor that the carrier may deliver for the personal use of the consignee.

5. Intoxicating Liquors—Evidence—Sufficiency of to Sustain Conviction—Personal Use.—When the liquor is properly marked for personal use and there are no incriminating facts or circumstances tending to show that it was not intended for personal use, the carrier cannot be convicted on evidence alone of the delivery of as much as 14 gallons of whiskey at one time.

MAXWELL & RAMSEY, LAWRENCE MAXWELL, JOSEPH S. GRAYDON and MORGAN & NUCKOLS for appellant.

CHARLES H. MORRIS, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The Adams Express Co. was indicted by the grand jury of Perry county charged with violating subsection 2 of section 2569b of the Kentucky Statutes by delivering to one Harlan Patrick in local option territory on March 9, 1916, whiskey not intended for his personal use. On a trial of the case there was a verdict and judgment in favor of the Commonwealth, and the express company appeals.

The indictment, which was returned by the grand jury on November 28, 1916, in lieu of an indictment that had been returned on March 11, 1916, in apt terms charged that there was marked on the outside of the package containing the liquor—which it was charged was delivered on March 9, 1916—the statement that it contained 12 gallons and that "the liquor was for the

personal use of the said Harlan Patrick, but which statement was false and such liquor was not intended for the personal use of said Harlan Patrick and the said Adams Express Co. knew that said statement was false and knew that the said liquor was not intended for the personal use of the said Harlan Patrick at the time it so delivered same.''

On the trial of the case the Commonwealth introduced the agent of the express company, who was the only witness in its behalf, and he testified that on July 9, 1915, he delivered to one Harlan Patrick, as shown by the records of his office, a barrel containing 14 gallons of whiskey in glass bottles or containers, and that on January 28, 1916, he delivered to one Harlan Patrick, as the records of his office showed, a barrel containing 12 gallons of whiskey in glass bottles or containers. It further appeared from the evidence of this witness that there were two persons by the name of Harlan Patrick; that one of them lived in Knott county and the other in Perry county; and that the package delivered on July 9, 1915, containing 14 gallons, was delivered to the Harlan Patrick who lived in Perry county, while the package containing 12 gallons was delivered on January 28, 1916, to the Harlan Patrick who lived in Knott county.

It further appeared from his evidence that each of these packages contained on the outside thereof a statement, as provided in subsection 2 of section 2569b of the statutes, giving the name and address of the consignor, and the name and address of the consignee, and stating that it was for the personal use of the consignee. It also appears that the express company kept the record required by subsection 3 of section 2569b, showing the quantity and kind of liquor received, the name and address of the consignor, the name and address of the consignee, and the purpose for which the liquor was intended to be used as stated upon the outside of the package, as well as the date when received and when delivered, and by whom and to whom delivered.

After this evidence had been introduced, counsel for the express company moved the court to exclude from the consideration of the jury the evidence as to the 14 gallons delivered on July 9, 1915. But this motion was overruled and thereupon the trial judge orally instructed the jury that he had committed error in allowing the introduction of evidence as to the delivery of the package of liquor on January 28, 1916, to Harlan Patrick living in Knott county, containing 12 gallons, and admonished

them that in making up their verdict they should not consider the evidence concerning the delivery of this 12 gallons of whiskey.

No evidence was offered by the express company, and the jury were instructed in substance that if they believed from the evidence that within twelve months before the finding of the indictment, that is, within twelve months before March 11, 1916, the express company delivered to Harlan Patrick a package of liquor on which there was a statement that the liquor was for the personal use of the consignee, and further believed beyond a reasonable doubt that the statement appearing upon the outside of the package that the liquor was for the personal use of the consignee was known to the defendant to be false and was in fact false, they should find the defendant guilty. They were further instructed that unless they believed beyond a reasonable doubt that Baker, the agent of the company who delivered the whiskey, had such information as would put an ordinarily prudent person on notice that the statement on the package containing 14 gallons, which was delivered to Harlan Patrick, that it was for his personal use was false and also that it was in fact false, they should find for the defendant.

It will be seen from what has been said that the indictment charged the delivery to Harlan Patrick of 12 gallons of whiskey on March 9, 1916; that the evidence showed that there were two persons by the name of Harlan Patrick, one of whom lived in Knott county and the other in Perry county; that the Harlan Patrick who lived in Perry county was the consignee of the 14 gallons delivered on July 9, 1915, while there was delivered to the other Harlan Patrick, who lived in Knott county, the 12 gallons on January 28, 1916; that the trial court took from the jury all evidence concerning the delivery of the 12 gallons to the Knott county Harlan Patrick on January 28, 1916, and instructed the jury that if they found the defendant guilty it must be for the delivery to the Perry county Harlan Patrick of 14 gallons on July 9, 1915, and accordingly the verdict of the jury was based on the delivery of the 14 gallons on July 9, 1915.

Now the question is, could the express company be found guilty of having unlawfully delivered a package of liquor containing 14 gallons when the indictment charged that the offense was committed by the unlawful delivery of a package containing 12 gallons?

The statute regulating this offense provides, as we have seen, that the carrier shall keep a record of its deliveries of liquor in prohibited territory, and that this record shall show the quantity and kind of liquor delivered as well as the date of delivery, the name of the consignor and consignee. This record is accessible to the Commonwealth and was evidently before the grand jury when the indictment in this case was found, as the indictment specified the delivery of 12 gallons, although the date of the delivery as fixed in the indictment was March 9, 1916. The date, however, of the delivery of whiskey fixed in the indictment was not material. The Commonwealth had the right to show a delivery of the quantity specified in the indictment to the consignee named in the indictment at any time within one year before the indictment was found, and this indictment covered the year antecedent to March 11, 1916.

But we think the Commonwealth should show the unlawful delivery of the quantity of liquor specified in the indictment to the consignee named in the indictment. In other words, the evidence as to the quantity of the liquor and the name of the consignee must, in this class of cases, correspond with the indictment. If there is a material variance between the indictment and the evidence in respect to the name of the consignee or the quantity of liquor delivered, it will, if prejudicial, be fatal to the prosecution. The statute describes the essential ingredients constituting offenses committed under it, and among these essentials is that the liquor was not intended for the personal use of the consignee to whom it was delivered. If it was for his personal use, the carrier is not guilty; therefore, it is important for the carrier that it should be accurately informed concerning the name of the consignee and the quantity of liquor delivered, in order that it may prepare itself to show that it had no information that the liquor was not intended for personal use, or that it had information showing that it was intended for personal use. Nor will this rule impose any difficult task on the Commonwealth or put any obstacle in its way in framing the indictment to correspond with the evidence, because the Commonwealth can, if it desires, have before the grand jury and at the trial the records kept by the express company which show all deliveries of liquor, the date, the quantity, and the name of the consignee, and assisted by these records there is no reason why the indictment should not state accurately the name of the consignee, the quantity of whiskey delivered and

the date of the delivery or why the evidence should not
correspond with the indictment. But it is said that as
both of these deliveries were to consignees of the same
name, to-wit, Harlan Patrick, the express company, by
an inspection of its records, could easily have ascer-
tained how many deliveries had been made to consignees
by the name of Harlan Patrick within the year, and so
it should be prepared to meet the issue tendered as to a
delivery to any person by the name of Harlan Patrick
within the year.

But we do not think the similarity in the names of the
consignees should have the effect of putting on the ex-
press company the burden of preparing itself to meet
the questions of the legality of deliveries to every per-
son of the same name. It has the right to be advised of
the particular person it is charged with the unlawful de-
livery to and need only prepare itself to meet the le-
gality of its delivery to that particular person. It might
as well be said that the express company should prepare
itself to meet an issue tendered in the indictment as to
the unlawful delivery of liquor to "B" when the evi-
dence for the Commonwealth was directed to showing an
unlawful delivery to "A," as to say that the express
company must be prepared to meet an issue tendered as
to one of any number of persons of the same name.

But the variance between the indictment and the evi-
dence did not constitute reversible error unless it was
prejudicial to the substantial rights of the express com-
pany, because we are prohibited by section 353 of the
Criminal Code from granting a new trial for errors ap-
pearing in the record, unless, "upon a consideration of
the whole case, the court is satisfied that the substantial
rights of the defendant have been prejudiced thereby."
And there is no showing in the record that the substan-
tial rights of the express company were prejudiced by the
variance. It did not introduce or offer to introduce any
evidence. It did not claim to be taken by surprise at the
course the evidence took, and it had present its agent,
who was the only witness introduced for the Common-
wealth. It was content to rest its objection to the va-
riance upon its motion for a peremptory without disclos-
ing by affidavit or otherwise that the variance was prej-
udicial or that it was taken by surprise; nor did it ask
that the swearing of the jury be set aside and the case
continued in order to give it opportunity to meet and
overcome the evidence for the Commonwealth.

The remaining question is, was the evidence for the Commonwealth sufficient to support the indictment?

It will be observed that it is necessary to sustain a conviction under the statute that it should appear, as set forth in the indictment as well as in the instructions, that the statement on the package that the liquor it contained was for the personal use of the consignee was known to the express company to be false and was, in fact, false.

With this understanding of the law controlling the case, we will again look to the evidence to ascertain whether it was sufficient to show that the statement that the liquor was for the personal use of Harlan Patrick was false, and to show that the express company knew it was false and that it was, in fact, false.

Baker, the agent of the company during the year antecedent to and covered by the indictment, testified that he did not know the Harlan Patrick to whom the 14 gallons were delivered in July, 1915, or have any idea why he wanted that much whiskey; that all he knew about it was that it was marked for his personal use; that Patrick told him it was for his personal use, and he believed he was getting it for his personal use; that he had no reason to suspect that it was not for his personal use, or any information that would put him on notice that the statement on the package, or the declaration of Patrick, was false; that this shipment was the only liquor he had delivered to Patrick.

From this evidence, which is all there was for the Commonwealth, it will be seen that there was no evidence, direct or circumstantial, tending to show that Patrick was a bootlegger, or that he had ever been engaged in the business of furnishing liquor to others, or that he had the reputation of being a bootlegger or an illegitimate vendor of spirituous liquors, or that he had ever been indicted or prosecuted for selling liquor in violation of law, or that he intended to sell, lend or furnish any of the liquor he obtained to any other person in violation of law, or that it was not in good faith intended for his personal use, or that there had been delivered to him before or since July, 1915, by the express company liquor of any kind, in any quantity, or any liquor previous or subsequent to the finding of the indictment, except the 14 gallons.

In view of this condition of the evidence, it will be seen that the correctness of the conviction depends on

whether the delivery of 14 gallons of whiskey at one time and in one package to a consignee is sufficient to show of itself, in the absence of any supporting or corroborating, incriminating facts or circumstances, that the whiskey so delivered was not intended for the personal use of the consignee and that this fact was known to the express company.

When it is kept in mind that there is no statutory or other limitation on the amount of liquor that a carrier may deliver for the personal use of the consignee when the package containing the liquor is marked in the manner required by the statute, and further kept in mind that there cannot be a conviction of the carrier unless, as stated in the instruction, there is evidence to show that "the agent of the company who delivered the whiskey had such information as would put an ordinarily prudent person on notice that the statement on the package containing the 14 gallons which was delivered to Harlan Patrick that it was for his personal use, was false and also that it was, in fact, false," it seems very plain that the mere act of delivering one package properly marked is not in and of itself sufficient to sustain a conviction. Under the statute it is not the quantity delivered that constitutes the guilt of the carrier, because it may as readily be convicted for delivering a pint as a gallon, or a quart as 20 gallons, if there is evidence, circumstantial or direct, sufficient to bring home to the carrier the notice specified in the instruction quoted. Its guilt or innocence does not depend solely on the quantity delivered, but on the use to which the consignee intends to put it and the knowledge the carrier has of this contemplated use.

Of course, the quantity is a circumstance that may be considered by the jury in connection with other circumstances in determining the guilt or innocence of the carrier, but a conviction cannot be had on evidence of quantity alone unless there are some other incriminating facts or circumstances. It would be absolutely indefensible to say that a carrier could be convicted alone on evidence that it had delivered one package of liquor, marked in the manner required by the statute for the personal use of the consignee, when the statute gives it the right to deliver without limitation as to quantity liquor so marked for such use. A mere statement of this proposition is sufficient to show the indispensable necessity for some other incriminating facts or circum-

stances before there can be a finding of guilt for the delivery of a single package.

We have written several cases on this subject, but in no one of them had a conviction been sought on evidence alone of the quantity of liquor delivered at one time. In every case there were other incriminating facts or circumstances. Here there are none. An inspection of the opinions in American Express Co. v. Com., 171 Ky. 1; Adams Express Co. v. Com., 174 Ky. 296; Adams Express Co. v. Com., 177 Ky. 159; and Southern Express Co. v. Com., 177 Ky. 767, will show a settled purpose on the part of this court to give to the statute a very liberal construction, with a view of accomplishing the purpose of its enactment, but a conviction cannot be sustained in any case in the absence of some evidence, circumstantial or direct, tending to show the guilt of the defendant.

Wherefore, the whole court sitting, the judgment is reversed, with directions to set aside the judgment appealed from and grant the express company a new trial.