## Louisville Railway Company v. Farmer.

(Decided December 6, 1918.)

Appeal from Jefferson Circuit Court
(Common Pleas Division No. 1).

1. **Appeal and Error—Question for Jury.**—Where there is a question of fact upon which the evidence is conflicting, it is for the jury, and its verdict will not be disturbed by this court unless it be flagrantly and palpably against the evidence.

2. Appeal and Error—Argument of Counsel—Misconduct.—Misconduct of counsel for plaintiff in the closing argument to the jury, in a suit for a recovery of damages, has often been held reversible error, but if the statements complained of are within the realm of legitimate argument and are in response to statements and arguments of opposing counsel a reversal will not be granted.

3. Appeal and Error—Argument of Counsel—Misconduct.—Where counsel for defendant in a damage case travels outside the record in his argument to the jury, counsel for plaintiff may respond thereto in kind if he does not transcend the usual proprieties, and this will not constitute such misconduct of counsel for plaintiff as will warrant a reversal of the judgment, even though the argument be objectionable.

STRAUS, LEE & KRIEGER and HOWARD B. LEE for appellant.

ELMER C. UNDERWOOD and ROBERT G. WULF for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Only two grounds are urged for reversal of this case, (1) the verdict is contrary to the evidence and is not sustained by sufficient evidence, (2) misconduct of counsel for plaintiff in his closing argument to the jury.

Miss Farmer was injured by a fall from the street car of appellant company on west Broadway near the intersection of Twelfth street, in Louisville. She was a passenger and was traveling west. Her destination was Twelfth street. The accident happened about 9:15 o'clock at night. According to her testimony and that of at least one of her witnesses she rang for a stop at Twelfth street. This, however, is denied by defendant. The car in which she was riding was what is generally known as an open or summer car with the seats running crosswise, the passengers entering and leaving the cars from the side. She says after ringing the bell to indicate she desired to alight at Twelfth street, the car stopped near the intersection and at the usual place for such stop, on the approach side, and a man boarded the car as she attempted to alight, and just as she was on the step or running board leading to the street and her left foot touching the ground, the conductor gave a signal to start the car and the car was suddenly started, throwing her on her back in the street, inflicting severe injuries upon her head, back and other parts of her body. Appellant company contends that Miss Farmer attempted to leave the car before it had ceased to move and was thereby thrown and injured. If the accident happened as contended by the company, then it is not

liable, but if it happened as detailed by plaintiff and her witnesses, then she is entitled to recover. Miss Farmer herself testifies at great length, answering a great many questions both on direct and cross-examination. Her version of the accident is as follows:

"Before I got to 12th street, I rang the bell, just as it was leaving 11th street, in order to get off at 12th street, and when I got there, the car had stopped at its proper destination, and I got up—I had rung the bell, and I got up, and of course, I was sitting right at the end of the car, and when I got up I had my fruit—I had a sack of fruit in this left hand, peaches and bananas, and of course, turning around to get off, it throwed me looking up east Broadway. I had to get off onto the running board with both feet, and when I got ready to get down I just had my left foot to the asphalt. Q. When you were ready to get down from where? A. From the car, just getting off of the car, I had put my foot down, and had not released myself from the car with my right foot and hand, and the conductor touched the bell twice, I heard him, and he jerked me and pulled me loose from the car before I released myself, throwing me on my head and my back. Q. Let me understand about that, when this bell rung for the car to go, just before the bell rung, was the car standing still or not? A. Yes, sir; the car was standing. He had not given me time to get off of the car. Q. When the bell rung, what was your position, just as the bell rung? A. I was just ready to put my right foot down to get off. Q. Where were your feet when the bell rung? A. Well, when the bell rung? Q. Yes? A. I guess I was thrown to the ground, jerked off of the car. Q. Just the second before the bell rung, where were your feet, up in the body of the car, or on the running board? A. No, sir; one was on the ground, and the other on the running board, my left on the ground—the asphalt, and my right on the running board. Q. Where was your right hand? A. On the car—the seat where I was holding. Q. You were holding with your right hand? A. With my right hand, and my fruit was in my left hand. Q. The car was facing west? A. Yes, sir. Q. As you got off of the car? A. Yes, sir. Q. As you got off the car which way were you facing? A. I was facing looking east. Q. When the car started what did it do to you, if anything? A. It jerked me and threw me on the ground and knocked me unconscious. I did not know anything.

Q. Did you fall on your face or on the back of your head, or how? A. I fell on the back of my head. Q. Well, what was done with you? A. When I come to—of course, I was unconscious, and when I came to, why, the conductor and another gentleman realized what had happened—the conductor and another gentleman, I don't know who it was, led me in front of Mercer's drug store.''

Then she called as a witness a fellow-passenger named App, who corroborated her in practically every detail of her evidence. He sat on the rear seat of the car, and says he was looking at her at the time she rang for a stop and at the time she attempted to alight. He also saw the man board the car just before she alighted. According to Miss Farmer and the witness App the car stopped before she attempted to alight, but started before she had reached the ground, and her fall was thereby precipitated. The witness who saw the accident was asked: ''Q. Did she fall on her face or on her back A. On her head; I could hear her head crack.'' Aside from the witness App, Miss Farmer called two physicians to show the nature and extent of her injuries and several other non-expert witnesses to show that she had lost flesh since the accident and had undergone much physical suffering. Dr. Grunterman, who was called immediately after the accident to attend Miss Farmer, gave the following testimony: ''Q. What condition did you find Miss Farmer in? A. She was very excitable and was covered with blood; blood all over her shirtwaist, and her head was matted with blood. Q. What did you find the matter with her head, if anything? A. I found a lacerated wound about three inches long. Q. What portion was that in? A. The back of her head, the left side. Q. Well, did you find any other evidence of injury upon her person? A. Yes, sir. Q. Where were they? A. There was several bruises on her body, I did not examine her person at the time, I dressed her head first. . . . . I found there was several bruises on her, her left arm was very sore and tender and bruised, her elbow, her left hip, and she complained of her back hurting very badly. Of course, I just thought that was from the bruises, as a person generally gets from any accident, being shook up, and I dressed the elbow and gave her a liniment to rub on her hip. I did not pay much attention to her back at the time. I treated her—that was the 22nd of July, and I treated her up until

the 4th of August. The wound became infected and it was very contrary to healing. Finally by the 4th of August though it was well. Her arms were about well at that time, although she still complained with them a little bit, and complained of her back, and I dismissed the case. Well, that is all with the head wound, and the bruises on her back; but months following that, I think it was her cousin, Mrs. Larue, told me several times that she could not— . . . . Yes, sir; at that time she was still complaining. . . . . I think it was the 11th of November if I am not mistaken. Q. Where, what portion of her back? A. She complained about the small of her back, in the lumbar region. . . . . She still had a scar in her head and the hair growing out and everything I could not tell anything that was wrong there. Standing erect you could see that there was a lateral curvature of the spine. We came to the conclusion that the left kidney was displaced. Of course whether it was displaced from the accident or not we could not say, but it was displaced.''

The doctor in answer to a hypothetical question stated that from such an accident where a woman is thrown to the ground, striking on her back, and is injured in her back in the lumbar region, it is probable that the dislocation of the kidney resulted from the fall. He further said that the dislocated kidney was calculated to produce nervousness and that the pain of which she complained in her back probably resulted from the dislocation of the kidney.

Her cousin, Mrs. Laura, with whom she lived, testified concerning the injury and further stated that Miss Farmer was brought to her apartments at the corner of Broadway and 12th street, in Louisville, immediately after the accident, and that she was bleeding profusely from a deep wound on the back of her head, and that there were other bruises on the body and limbs of Miss Farmer; that Miss Farmer was confined to her bed and room for some weeks and had not since the accident regained her normal health; that immediately after the accident and while the conductor of the car from which Miss Farmer fell was in the apartment, Mrs. Larue looked from her window to see where the car was situated in the street, and observed it setting on the crossing at the intersection of 12th street so as to obstruct the passage of 12th street cars. This evidence sustains that of plaintiff and her other witnesses in that it tends

to prove that the car had stopped at its usual place on its approach to 12th street and had again started moving into 12th street. This the company denies but admits that the car was partly in 12th street. While the conductor was in the apartments of Mrs. Larue with the injured lady he expressed his regret at the injury, and when Miss Farmer was asked how the injury happened she stated: "If he had only let me get off the car it would have never happened, just give me time, why, it never would have happened," to which the conductor made no response, except that he regretted the accident. Of the several witnesses introduced by the company only one—Cooper—shows that he actually saw Miss Farmer fall from the car, and he states that she attempted to alight before the car stopped at the intersection. Other witnesses give testimony in corroboration of what the witness Cooper stated in evidence.

The jury returned a verdict of $1,000.00 for the plaintiff, Miss Farmer. As there was conflict in the evidence, it was properly submitted to the jury. The evidence of the plaintiff alone is sufficient to support the verdict, and when taken in connection with the testimony of the witnesses App and Mrs. Larue, it abundantly supports the finding of the jury. We are unable to say from the reading of the testimony that the verdict is not supported by the preponderance of the evidence, but whether it is or not the oft repeated rule that a verdict of a properly instructed jury will not be disturbed unless it be palpably and flagrantly against the evidence, makes it incumbent upon this court to sustain the finding of the jury.

The statements attributed to counsel for plaintiff in the closing argument before the jury are as follows:

"This is not a suit against the conductor, but it is a suit against the company. I do not contend that the conductor is guilty of perjury. Where one person goes through the same operation week after week, month after month, and year after year, the operation becomes automatic or mechanical and the person frequently does not remember whether he did or did not do a particular thing. It is the same way with a conductor; some of them are required by the company to work twelve, fourteen, sixteen and eighteen hours a day; their movements become automatic and they frequently do not remember just what they do or fail to do."

To the foregoing statements of counsel for plaintiff defendant objected, the objection was sustained by the court. Then counsel for plaintiff added: ''This is a matter of common knowledge.'' Further on in the argument plaintiff's counsel said: ''The witness Peter App has no feeling against the company simply because twelve honest men gave his wife a judgment in damages against the company.'' To this objection was made by defendant and sustained by the court. Again counsel for plaintiff said, ''I see that there is a man on this jury, who is a member of a lodge, of which one of the employes of the defendant is a member; I am, also, a member of that lodge, and I know what that lodge teaches and I know that that lodge does not teach it is right to rob Peter to pay Paul.'' To this statement objection was also made by defendant and the court sustained the objection.

It must be admitted that these staitements, unexplained, appear to be without justification on the part of counsel for plaintiff, but in the light of the surrounding circumstances, the evidence and the argument of opposing counsel, they have quite a different aspect. For instance, counsel for defendant company in arguing the case to the jury immediately before the argument was made of which complaint is made, stated:

''Mr. Able, the conductor of the car, is a laboring man who has been a trusted employe of the company for twenty years. He voluntarily resigned his position to work with the Maxwell Motor Company in Indiana, and he is a hard working, honest, laboring man. Of course, the company is going to pay his expenses to Louisville and to return to his home. He stated to you on the witness stand that he was willing to pay his own expenses if need be. Do you believe that an honest man like this, is guilty of perjury? Mr. Underwood would have you believe that the conductor was guilty of perjury when Mr. Underwood insists that the conductor started the car while the plaintiff was alighting.''

These statements of counsel for the company are copied in the bill of exceptions. In response to that statement counsel for Miss Farmer, stated, ''This is not a suit against the conductor but is a suit against the company,'' and made the other statements copied above, with reference to the likelihood that the conductor, who had testified for the company, was mistaken because he had gone through the same operation so frequently that

it had become automatic, and he could not remember all the things that took place. Viewed in this light, we think the statement of counsel was entirely justified and was but legitimate argument to the jury, having under consideration the weight and credibility to be attached to the evidence of a given witness. True the defendant objected to this argument at the time and the trial court sustained the objection, and stated that there was no evidence upon which to base such argument. All this took place in the presence of the jury. With reference to the statement of appellee's counsel that the witness App "has no feeling against the company simply because twelve honest men gave his wife a judgment in damages," it may be said that it was equally justified in view of the fact that counsel for the company had just asserted to the jury that "You need not place any credence in the testimony of Mr. App, for he is plainly hostile to the Louisville Railway Company," and the further fact that the evidence showed that Mrs. App had sued the company for personal injuries some time before. To this argument defendant, by its counsel, objected, and the court sustained this objection, also telling the jury there was no evidence upon which to rest it. In examining the jurors upon their *voir dire*, counsel inquired of one of them if he was a member of a certain secret order or lodge of which the detective or law agent of the railway company was a member, to which the juror responded that he was such a member and that he knew the agent of the company, who was also a member of the order. This detective or agent of the company had prepared the evidence of this case, had attended upon the trial throughout, and was present at the time the argument was made. With these facts in mind, counsel for plaintiff said in his argument, "I see there is a man on this jury who is a member of the lodge of which one of the employes of the defendant is a member. I am also a member of that lodge and I know what that lodge teaches and I know that that lodge does not teach that it is right to rob Peter to pay Paul." Defendant also objected to this statement and the court sustained the objection, saying that there was no evidence upon which to base it. This ruling of the court was also made in the presence and hearing of the jury. The jury's attention had been called to the fact that the detective of the railroad company was a member of the secret order to which the juror belonged, and the mere assertion of counsel that

he was also a member of that order and that it did not teach that Peter should be robbed in order to pay Paul, could not have been prejudicial under all the facts of this case. The statement was not calculated to unduly influence the jury or any member of it because it conceded that the agent of the company was also a member of the lodge. Rather the argument was intended to neutralize the influences which the membership of the company's agent in the secret society with the juror might have been expected to have if appellant's counsel's contention is to be seriously considered. Certainly the juror would not have been justified in returning a verdict for the company on account of its detective being a member of the society any more than for the plaintiff on account of the membership of her attorney in his fraternity. Both facts were *dehors* the record, and should not have been referred to. The well established rule is that where counsel for defendant, in cases of this kind, goes outside of the record in his argument and discusses a subject or declares the existence of a fact or facts, opposing counsel in concluding the argument may respond thereto in kind, if he does not transcend the usual proprieties, and such response will not be grounds for a reversal even though it be subject to objection. L. H. & St. L. R. R. Co. v. Morgan, 110 Ky. 740; Louisville Ry. Co. v. Sheehan, 85 S. W. 688; Illinois Cent. R. Co. v. Colly, 86 S. W. 536; C., N. O. & T. P. Ry. Co. v. Tucker, 168 Ky. 144; Western Ky. Coal Co. v. Key, 178 Ky. 220; Adams Express Co. v. Commonwealth, 177 Ky. 159.

We apprehend, however, that the admonition of the court was sufficient to overcome any untoward influence which the statement of counsel might otherwise have had, if any, upon the minds of the jury, or any member of it.

We conclude, therefore, that the verdict is sustained by the evidence and that the argument of counsel for the plaintiff, while improper, was not prejudicial to the rights of appellant.

The judgment is affirmed.