# DECISIONS

OF THE

# Court of Appeals of Kentucky

## SPRING TERM, 1916.

### American Express Company v. Commonwealth.

(Decided June 16, 1916.)

### Appeal from Grayson Circuit Court.

1. Criminal Law—Section 11 Criminal Code—Trial—Verdict.—In a penal action authorized by section 11 of the Criminal Code the defendant must be convicted by a unanimous verdict of the jury; the "civil actions" referred to in section 248 of the Kentucky Constitution are such as involve property rights between individuals, and penal actions which are of a quasi criminal nature, are not embraced therein.

2. Corporations—Crimes and Criminal Prosecutions.—A penal action may be maintained against a corporation or a joint stock company under a statute by which both a fine and imprisonment may be inflicted, although the section of the code only authorizes such actions where the punishment is by fine alone, for the reason that the imprisonment provided by the statute cannot be enforced against a corporation, and the only punishment which could be enforced is a fine.

3. Intoxicating Liquors—"Person"—Meaning of.—The word "person" in the concluding sentence of subsection 2 of section 2569b, Kentucky Statutes, includes any corporation or combination of individuals.

4. Intoxicating Liquors—Transportation.—On the trial of a carrier charged under that statute with delivering liquor in local option territory to one knowing that the statement upon the outside of the package was false and that it was received by the consignee for the purpose of sale in local option territory it was error to instruct the jury that it was the duty of the defendant before delivering the package to use such care as a prudent person would use under like circumstances to ascertain the purpose for which the liquor was to be used and whether or not the state-

vol 171—1

ments on the package were false. The statute imposes upon the agent no duty to inquire into such things.

5.  Intoxicating Liquors—Transportation.—If, however, the agent knows or has such information as would cause a reasonably prudent man to believe the liquors were intended for sale contrary to law then only is the company guilty of the offense.

6.  Intoxicating Liquors—Transportation—Evidence.—The reputation of the consignee in the community for being a vendor of liquors contrary to law is competent against the company on such an issue, as it might tend to show knowledge or the possession of such information by appellant's agent.

7.  Intoxicating Liquors—Transportation—Evidence.—Evidence showing the possession by the consignee of a United States revenue license to sell liquor is incompetent against the carrier, unless it be accompanied by evidence that the carrier's agent who delivered the liquor knew of the existence of such license.

8.  Intoxicating Liquors—Transportation—Evidence.—No duty devolved upon the agent to go to the office of the collector of internal revenue, or even send there and find out whether such license had been issued.

9.  Intoxicating Liquors — Transportation — Evidence.—Knowledge which any of the agents of the carrier may have had at other places remote from the place of delivery cannot be imputed to the agent at that place, unless there is evidence showing such knowledge has been transmitted to him. The agent transacting the particular business is the one through whom the knowledge must be imputed to the company.

TRABUE, DOOLAN & COX, S. L. BARKER, J. B. HELM and M. A. ARNOLD for appellant.

CHARLES CARROLL, H. D'H. MOORMAN and M. M. LOGAN, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TURNER.—Reversing on original appeal and affirming on cross appeal.

This is a penal action brought in the name of the Commonwealth v. The American Express Company, wherein it is alleged that the defendant is a joint stock company organized under the laws of New York, and that on the 27th of November, 1914, it was engaged in the business of a common carrier of goods and merchandise for hire in Grayson county, and in the Caneyville precinct of that county, and that on that date and for compensation it unlawfully and knowingly transported into Caneyville precinct packages containing intoxicating liquors, and unlawfully and knowingly delivered the same in that precinct to one Wid Carroll, and that there appeared on said package a statement that said liquor was for the

personal and family use of the consignee, Wid Carroll, and that said statement upon the outside of said package was false and the said liquor was received by Carroll for the purpose of sale in violation of the prohibition law then in force in that precinct, and that the defendant knew at the time it delivered same to said Carroll in said precinct that the statement upon the outside of said package of liquor was false and knew that the same was received by Carroll to be sold in violation of the prohibition law then in force in that precinct.

The defendant pleaded not guilty, as it is authorized by law to do, and on a trial was found guilty in a verdict signed by ten members of the jury; but the court on a motion for a new trial granted it solely upon the ground that the instruction authorizing a verdict by nine members of the jury or any less than the whole, was erroneous.

Another trial was then had and the defendant was found guilty by a verdict concurred in by twelve jurors, and from a judgment on that verdict this appeal is prosecuted; the Commonwealth has been granted a cross-appeal which raises the single question whether in a penal action a verdict may be rendered by three-fourths of the jury as is authorized by the constitution in civil cases.

The criminal code, section 11, provides that a public offense for which the only punishment is a fine may be prosecuted by penal action in the name of the Commonwealth and that the proceedings in such actions be regulated by the Code of Practice as in civil cases.

The action is based upon the provisions of the act of 1914, now section 2569b, Kentucky Statutes, and upon the second section of that act.

The first three sections of that act are as follows:

''Any person in any county, district, precinct, town or city in this State where the sale as a beverage of vinous, malt, brewed, fermented, spirituous or intoxicating liquor is prohibited by law who has paid the United States internal revenue tax permitting the sale of any such liquors, shall be deemed to have paid such tax with an intent to violate the prohibitory laws of this State, or of such county, district, precinct, town or city, and it shall be unlawful for any such person to buy, bargain for, accept, receive, hold or possess any such liquors. Provided, however, that none of the foregoing provisions of this section shall apply to any druggist authorized by the laws

of this State to sell such liquors for medical, scientific and sacramental purposes, nor wholesale dealers in, or brewers or distillers engaged in the manufacturing of, such liquors in said prohibition territory. And it shall be unlawful for any person to buy for, sell, furnish, or knowingly deliver, ship, or in any manner transport to any such person as first above mentioned in this section or his agent or any minor any of the liquors heretofore mentioned.

"Section 2. It shall be unlawful for any person to consign, ship or transport in any manner whatsoever, or deliver any of the liquors mentioned in section 1 of this act to any person in any county, district, precinct, town or city where by law sale of such liquors is prohibited, or for any person residing in such prohibited territory to receive any such liquors, unless there appears upon the outside of the package containing any such liquors, except such as may be received by distillers, brewers, or wholesale liquor dealers, the following information: Name and address of the consignor, name and address of the consignee, and the statement either that such liquors are for personal and family use of the consignee, or for medical, mechanical, chemical, scientific or sacramental purposes. Any consignee accepting or receiving any package containing such liquors upon which appears a false statement, or any person consigning, shipping, transporting or delivering any such package, knowing that said statement appearing upon the outside thereof is false, shall be deemed guilty of violating the provisions of this act.

"Section 3. All railroad, express or other transportation companies within this State, or doing business within this State, are hereby required to keep at each local office in territory within which the sale of intoxicating liquors for beverage purposes is prohibited by any law, a separate book, in which shall be entered immediately upon receipt thereof, truthful statements of the amount and kind of liquor received, the name and address of the consignor, the name and address of the consignee, the purpose for which said liquor is intended to be used, as stated upon the outside of the package containing such liquor, the date when received, the date when delivered, and by whom and to whom delivered; after which record shall be a blank space in which the consignee, by himself or his agent, shall be required to sign his true name

before such liquors are delivered to such consignee or his agent, which book shall be open to public inspection at any time during the business hours of said company. Such book shall constitute *prima facie* evidence as to the facts therein stated, and be admissible as evidence as to the facts therein stated, and be admissible as evidence in any court in this State. Any railroad, express or other transportation company, or any employe or agent thereof, who fails, neglects, or refuses to comply with the provisions of this section, or who makes, or causes to be made, any false entry in said book, shall be deemed guilty of a misdemeanor, and for each offense shall be punished by a fine of not less than fifty dollars, nor more than two hundred dollars, or imprisoned in the county jail not less than thirty days nor more than six months, or both such fine and imprisonment, in the discretion of the jury."

After the passage of the Webb-Kenyon law this court in Adams Express Company v. Commonwealth, 154 Ky. 462, construed that law in connection with section 2569a of the Kentucky Statutes then in force to mean that interstate shipments of liquor for personal use might be properly sent into local option territory within this State, but that intrastate shipments for personal use were prohibited; and after that opinion was rendered the General Assembly, in 1914, passed the act above quoted which evidences a complete departure from the previous policy of denying intrastate shipments from wet territory in this State to dry territory within the State, and it was held by this court that the act of 1914 repealed section 2569a. Adams Express Co. v. Crigler, 161 Ky. 89.

The first question is whether in a penal action the verdict of guilty may be rendered by a less number than the whole of the jury.

Section 248 of the Kentucky constitution reads as follows:

"A grand jury shall consist of twelve persons, nine of whom, concurring, may find an indictment. In civil and misdemeanor cases, in courts inferior to the circuit court, a jury shall consist of six persons. The General Assembly may provide that in any or all trials of civil actions in the circuit courts, three-fourths or more of the jurors concurring may return a verdict, which shall have the same force and effect as if rendered by the entire panel. But where a verdict is rendered by a less number

than the whole jury, it shall be signed by all the jurors who agree to it.''

And section 2268 of the Kentucky Statutes was passed conforming to that provision of the constitution.

In L. & N. R. Co. v. Com., 112 Ky. 635, it was held that the provision of the Criminal Code of Practice, section 238, that if there be a reasonable doubt of the defendant being guilty he is entitled to an acquittal, applies to a prosecution by a penal action as well as by indictment; and it was also held in that case that in a penal action the defendant is not required to file an answer, but may simply plead ''not guilty'' as he might have done as if he had been indicted. The court in that case, in discussing whether the defendant was entitled to an instruction that his guilt must be shown beyond a reasonable doubt, said:

''Thus it will be seen that the doctrine that the defendant is to be acquitted, unless proven guilty beyond a reasonable doubt, was a rule of the common law. If the defendant in this case had been indicted for the offense charged, it would have been entitled to the benefit of section 238 of the code, above quoted. We do not think that the change in the mode of prosecution at the option of the Commonwealth's attorney can have the effect of denying the defendant so important a right. The section quoted is of general application. This, although a penal action, is a prosecution; and the defendant comes within the letter of the section, as well as its humane purpose.''

And in the same case the court in discussing the question whether or not the defendant in such action might be required to file an answer, said:

''The court also refused to allow the defendant to plead 'not guilty' to the charge, and required it to file an answer to the petition. The defendant, under the constitution, cannot be required to give evidence against himself. He cannot, therefore, be examined by the State against his will, as to the truth of the charges against him. To require him to answer the petition, and specifically admit or deny its allegations, is indirectly to make him give evidence against himself; for his admission of an allegation in the petition would dispense with proof of it by the State. Whether, therefore, the prosecution is by penal action or indictment, a plea of not guilty, under the constitution, is the only answer that the defendant may be required to file, and puts in issue all the allega-

tions of the petition. A capias pro fine may issue on judgments, in a penal action. Cr. Code Prac., sec. 301; Long v. Wood, 78 Ky. 392; Harp v. Com., 22 R. 1792 (61 S. W. 467)."

It will be observed that the court in that case argued that if the defendant had been indicted for the offense charged he would have been entitled to the benefit of the provisions of section 238 of the code, and that the fact that the mode of prosecution was changed at the option of the Commonwealth's attorney to a penal action cannot have the effect of denying to the defendant the right given him under that section.

Applying the reasoning of the court in that case to the question here it seems to be conclusive that if a defendant who may be indicted for an offense is entitled to have his guilt established by the unanimous verdict of a jury that that valuable right cannot be taken from it by a mere change in the form of the prosecution at the option of the attorney for the Commonwealth.

It would be a most unreasonable, if not startling, interpretation of the section of the constitution quoted, to say that it was its purpose that if a man was indicted for an offense by a grand jury upon his trial he must be convicted by a unanimous verdict of a jury, but that if the prosecution for the same offense be had in the form of a penal action that he might be convicted by the verdict of three-fourths of a jury of twelve.

We entertain no doubt that the "civil actions" referred to in section 248 are such as involve property rights between individuals only, and do not embrace penal actions which are of a quasi criminal nature.

It is insisted for the appellant that as it is a joint stock company, and therefore only a co-partnership composed of individuals who may be punished as such, and that as the statute under which the action was brought authorizes not only the infliction of a fine, but the imposition of a jail sentence, a penal action does not lie against it under the provisions of section 11 of the Criminal Code, which only authorizes the institution of such action where only a fine may be inflicted.

But this court has held in Adams Express Company v. Schofield, 111 Ky. 832, that a joint stock company will be treated as a quasi corporation for the purpose of service of process, and it has been held in the case of Small v. Com., 134 Ky. 272, that a penal action against a cor-

poration, which cannot be imprisoned, may be maintained even though the act upon which it is based also provides for punishment by imprisonment, for the reason that the imprisonment cannot be inflicted against a corporation and the only punishment which could be inflicted upon it under the act would be a fine. These two opinions construed together are conclusive against appellant's contention on this question.

As said, this action is based upon the concluding sentence of subsection 2 of the act quoted, which provides that any consignee accepting or receiving any package containing liquors upon which appears a false statement, or any person consigning, shipping, transporting or delivering any such package knowing that the statement appearing on the outside thereof is false shall be deemed guilty of violating the provisions of the act.

It is the contention of appellant that subsections 1 and 2 of the act apply only to the consignor and the consignee, and that only subsection 3 applies to the carrier; but manifestly this contention cannot be maintained, for the very language of subsection 2 is inconsistent with it; it expressly provides the delivery to the consignee by any "person" shall constitute the offense, and in another section of the same act the word "person" is declared to include any individual, firm, company, partnership, corporation or any combination of individuals. From this it is apparent that it was intended by the last sentence in subsection 2 to embrace the delivery by the carrier of any package of liquors containing a false statement, if it knew said statement to be false.

The court on the trial gave instruction "B," wherein it said to the jury in substance that it was the duty of the defendant before delivering the package to use such care as an ordinarily prudent person would use under like or similar circumstances to ascertain the purpose for which said liquor was to be used and whether or not the statements on the package were false. Manifestly this instruction was erroneous. It is contrary to the whole spirit and meaning of the act. The purpose was not to make the agent of the company a detective to pry into and inquire about the contemplated use to which every package of liquor which came through his office was to be put, but it was intended only that the carrier should be liable if its agent should have such knowledge or be in possession of such information as would cause a prudent person

to believe that the liquors were intended for sale contrary to law. It imposes no duty upon him to make it his business to inquire into such things, but only that if he knows, or incidentally has such information as would make him believe, the liquors were intended for sale contrary to law, then the company is guilty if they are delivered. This statute of 1914, as said above, not only repeals the previous statute as to shipments into local option territory, but in all of its essential features is a radical departure from the previous law.

Even under the old act it was only incumbent upon the carrier before delivering liquor to a consignee to be circumspect and to use ordinary care to learn for what purpose it was to be used, and if it did so and acted upon reasonable grounds in good faith after an investigation it was not liable. Adams Express Co. v. Commonwealth, 154 Ky. 462. But it is apparent from the language of the act of 1914 that this rule was changed, otherwise the word "knowingly" would not have been used in it. That word, however, must be given a reasonable interpretation, and as correctly said by the court in its instruction in this case it means "such information as would cause a person of ordinary prudence to believe that the liquors were intended for sale contrary to law."

It is apparent instruction "B" was erroneous, and on another trial it will be eliminated.

There is much complaint of the introduction of incompetent evidence against the defendant. Evidence was permitted as to the reputation of Wid Carroll in the community for being a vendor of liquors contrary to law, and this we think was proper, for it might have tended to show knowledge of or the possession of such information by appellant's agent, in connection with other testimony, which might have been adduced, as would have authorized a conviction.

There was evidence introduced showing the possession by Carroll of a United States revenue license to sell liquor which had been issued three days before the shipment complained of. In as much as the statute requires knowledge upon the part of the company before it can be convicted under this charge, the admission of this testimony was erroneous unless it was accompanied by evidence that the company's agent who delivered the liquor knew of the existence of such license. No duty devolved upon the agent to go to the office of the Collector of In-

ternal Revenue, or even send there, and find out whether such a license had been issued.

Instruction "D" given by the court should have embraced the idea that if the defendant's agent at Caneyville, and not merely the defendant, did not know or have reasonable grounds to believe the package to Carroll was not for his personal use, but was intended for sale, they might find for the defendant. The instruction as framed might have been construed by the jury to mean that if the defendant through any of its agents at any place whatever, however remote, knew that the statement on the package was false and that Carroll intended to sell the liquor in the Caneyville precinct, they might find the defendant guilty.

Manifestly any knowledge which any one of the thousands of agents which the Express Company had at places remote from Caneyville could not be imputed to its agent at that place unless there was evidence showing that such knowledge had been transmitted to him. What we mean to say is that if the agent of appellant at any other point knew that the statement on the package was false such knowledge is not to be imputed to the company because of the delivery by its agent at Caneyville unless the agent at Caneyville also had such knowledge when he made the delivery. The agent transacting the particular business is the one through whom the knowledge must come to the company.

There is a discussion in the brief as to the constitutionality of the Webb-Kenyon law, the shipment in question being an interstate shipment; but as the validity of that act has been upheld by this court and by the Supreme Court of the United States we have not deemed it necessary to respond to the contention.

For the reasons indicated the judgment is reversed on the original appeal with directions to grant the appellant a new trial, and for further proceedings consistent herewith. And it is affirmed on the cross-appeal.

Whole court sitting.