AUDREY D. HANCOCK, APPELLEE, V. STATE OF NEBRASKA EX REL. STATE REAL ESTATE COMMISSION OF THE STATE OF NEBRASKA, APPELLANT.

331 N.W.2d 526

Filed March 25, 1983. No. 81-913.

Robert H. Petersen, Special Assistant Attorney General, for appellant.

James R. Place of Breeling, Welling & Place, for appellee.

BOSLAUGH, MCCOWN, and HASTINGS, JJ., and BRODKEY, J., Retired, and Rist, D.J.

RIST, D.J.

This is an appeal from an order of the District Court of Douglas County, Nebraska, reversing an order of the State Real Estate Commission of Nebraska, which latter order had suspended the real estate salesperson's license of plaintiff-appellee, Audrey D. Hancock, for a period of 30 days. The District Court held the commission's order to be arbitrary and capricious and ordered it set aside.

The following facts are relevant. On April 21, 1980, Angelina Prochaska entered into an exclusive real estate listing contract with Henry A. Hrdlicka, a licensed realtor, for the sale of Prochaska's residence in Wahoo, Nebraska. The contract provided the listing should continue to October 21, 1980. Hrdlicka placed his "for sale" sign on the premises sometime in April 1980. At some time thereafter and prior to July 26 of that year, the sign was lying on the ground and remained in that condition during the pertinent times thereafter.

On or about July 26, 1980, appellee, a licensed real estate salesperson, upon advice from others in the firm for which she worked that the Prochaska home might be for sale, made an appointment on July 27 to see Mrs. Prochaska. On arrival at the residence Hancock noticed the Hrdlicka sign lying in the yard. She asked Prochaska if Prochaska had listed the house before and Prochaska advised she had, but that she had "fired" Hrdlicka and that the property was no longer listed with him. Hancock then prepared a listing contract, which Prochaska signed, and shortly thereafter Hancock sold the house.

Hrdlicka then filed a complaint against Hancock with the State Real Estate Commission, alleging in

substance that Hancock had violated Neb. Rev. Stat. § 81-885.24(14) (Reissue 1981) by negotiating a listing and sale contract when she knew or should have known of another outstanding listing contract.

At the commission hearing Hrdlicka testified that Prochaska had told him sometime after the original listing that she was taking the house off the market, but denied he released her from his listing contract. He did testify that illness during the listing period limited his ability to carry on his real estate business. He said he first learned of the other listing in early August and later advised Hancock's firm of the fact that he also had a listing contract.

Prochaska testified at the commission hearing that after she had listed her home with Hrdlicka she became dissatisfied with his lack of effort in selling the property; that she called him by telephone and told him of this and that she was discharging him. She further testified that Hrdlicka asked what he should do with the listing contract, and she told him to throw it away and to pick up his sign. She said Hrdlicka told her he would have his son pick up the sign, but it was never done. Hrdlicka denied this conversation took place.

Hancock testified at the hearing that when Prochaska told her she had fired Hrdlicka, Hancock assumed a cancellation of that listing contract. She made no further inquiry about it. Through her efforts the Prochaska property was sold on August 20, 1980.

The broker for whom Hancock worked testified that Hrdlicka made no contact with them about this matter until August 20, 1980, when he inquired about his commission.

On January 27, 1981, the commission, following hearing, found that Hancock had entered into a listing agreement with Prochaska "when *she should have known that there was a possibility* that Hrdlicka had not released Prochaska from her obligation under his listing," by virtue of which she

violated the statute previously noted "by negotiating directly with Prochaska to withdraw from or break such listing contract for the purpose of substituting, in lieu thereof, a new listing contract granting an exclusive agency . . . to Hancock's employing broker." (Emphasis supplied.) The commission ordered Hancock's real estate salesperson's license suspended for 30 days. It was this action that was appealed by Hancock to the District Court, which court, on November 17, 1981, found that such order was not supported by substantial evidence, and vacated and set it aside as arbitrary and capricious.

The scope of review was treated in the briefs as being governed by Neb. Rev. Stat. § 81-885.31 (Reissue 1976). We note said section was repealed, effective February 18, 1981, and Neb. Rev. Stat. § 81-885.30 (Reissue 1981), then in effect, provided for judicial review of the commission's action under Neb. Rev. Stat. §§ 84-917 to 84-919 (Reissue 1981). These latter sections, insofar as material herein, provide that the case on appeal will be considered on the record of the agency involved, and the action reversed or modified if unsupported by competent, material, and substantial evidence, or when arbitrary or capricious. The latter sections govern since they were in effect at the time the District Court heard and acted upon the appeal. *Happy Hour, Inc. v. Nebraska Liquor Control Commission,* 186 Neb. 533, 184 N.W.2d 630 (1971); *Lovelace v. Boatsman,* 113 Neb. 145, 202 N.W. 418 (1925).

Section 81-885.24(14) gives the commission power to revoke or suspend a real estate license when the licensee has been found guilty of, among others, the following unfair trade practice: "(14) Negotiating a sale . . . [or] listing . . . of real estate directly with an owner . . . if he or she knows that such owner has a written outstanding listing contract in connection with such property granting an exclusive agency or an exclusive right to sell to another broker, or negotiating directly with an owner to withdraw from or

break such a listing contract for the purpose of substituting, in lieu thereof, a new listing contract granting an exclusive agency . . . to sell to himself or herself or his or her employing broker."

A basic issue is the construction of this statute. Appellee argues that the statute is penal in nature, must be strictly construed, that the commission cannot read into the statute a duty that she "should have known" of Hrdlicka's contract, and that the statute requires a showing that she in fact "knew" such a contract existed. Appellant argues that Hancock knew of the possibility of Hrdlicka's having a contract, that she should have known Prochaska could not cancel it unilaterally by "firing" Hrdlicka, that she should have made further inquiry about it, and that under these circumstances she has violated the statute.

We conclude that the statute is penal in nature and must be strictly construed. A penal statute is one by which a forfeiture is imposed for transgressing the provisions of the act and where the extent of the liability imposed is not measured or limited by the damage caused by the act or omission. *Department of Banking v. McMullen,* 134 Neb. 338, 278 N.W. 551 (1938). A penal statute is strictly construed, and its import may not be extended by construction to situations not clearly within its provisions. *Anderson v. Robbins Incubator Co.,* 143 Neb. 40, 8 N.W.2d 446 (1943); *Shamberg v. City of Lincoln,* 174 Neb. 146, 116 N.W.2d 18 (1962); *Misle v. Miller,* 176 Neb. 113, 125 N.W.2d 512 (1963); *Bachus v. Swanson,* 179 Neb. 1, 136 N.W.2d 189 (1965). In construing a penal statute nothing will be recognized, presumed, or inferred that is not expressed, unless necessarily or unmistakably implied in order to give effect to the statute. *Misle v. Miller, supra.*

In light of these rules of construction, we turn to the meaning of the word "know" as used in the statute under consideration. The meaning of the word "know" or "knowingly" in a penal statute varies in

the context in which it is used. *R. D. Lowrance, Inc. v. Peterson,* 185 Neb. 679, 178 N.W.2d 277 (1970). We have considered a number of penal statutes in which the word is used with respect to the actions of others or of facts not in the actual knowledge of the person to whom the statute is applied. A statute making it an offense to leave the scene of an accident "knowing" that injury has resulted to another has been held to mean actual, not constructive, knowledge, or such notice as would put one on inquiry, and more than mere negligence in failing to know, or the mere presence of facts which might have induced belief in the mind of a reasonable person. *State v. Dougherty,* 358 Mo. 734, 216 S.W.2d 467 (1949). A statute making it a crime to "knowingly" receive stolen goods has been held to require a person to have such information from facts which should convince him that the property was stolen, or which should lead a reasonable man to believe they have been stolen, before, in a legal sense, he knew they were stolen. *Pettus v. State,* 200 Miss. 397, 27 So. 2d 536 (1946). See, also, *Bennett v. State,* 211 So. 2d 520 (Miss. 1968). A statute making it unlawful for a person to "knowingly" deliver liquor intended for sale in a dry territory has been held to require such person to have such information as would cause a person of ordinary prudence to believe the liquor was to be so sold, before being liable under the statute. *American Express Co. v. Commonwealth,* 171 Ky. 1, 186 S.W. 887 (1916). In *Leary v. United States,* 395 U.S. 6, 89 S. Ct. 1532, 23 L. Ed. 2d 57 (1969), the Supreme Court was considering offenses involving the "knowing" transportation of marijuana, and in footnote 93 of the opinion it accepted the Model Penal Code definition of knowledge: "When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence, unless he actually believes that it does not exist." *Id.* at 46.

We conclude from an examination of these authorities and the statute here involved that a broker or salesperson will be considered to "know" of a prior listing contract if he had actual knowledge of it or if he had actual knowledge of facts that would cause a reasonably prudent person to believe such contract existed.

Applying this standard to the commission's finding that appellee "should have known that there was a possibility" of a prior contract, we determine that such finding does not meet the standard of knowledge required to show a violation of this statute. The commission was apparently unwilling on the evidence before it to find that appellee had such knowledge as would meet the necessary standard set out above, and its failure to make such a finding is fatal to its action. In that sense the commission's action is arbitrary and capricious, being an action taken on findings of fact that do not represent a breach of conduct within the terms of the statute.

We further note that under the provisions of §§ 84-917 to 84-919, which govern the scope of our review, we are not at liberty on the record in this case to make other or different findings of fact than those determined by the commission, so the latter's findings must stand as the factual determination herein. See, *The 20's, Inc. v. Nebraska Liquor Control Commission,* 190 Neb. 761, 212 N.W.2d 344 (1973); *Gosney v. Department of Public Welfare,* 206 Neb. 137, 291 N.W.2d 708 (1980).

We need not determine other issues raised in light of our decision on the issue set forth above.

Accordingly, the order of the District Court vacating and setting aside the commission's order of suspension and dismissing the complaint against appellee is affirmed.

AFFIRMED.