CLARENCE E. FISHER, APPELLEE, V. CITY OF GRAND ISLAND, NEBRASKA, APPELLANT.

479 N.W.2d 772

Filed February 7, 1992.   No. 89-682.

Keith Sinor, Grand Island City Attorney, for appellant.

Daniel M. Placzek, of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The City of Grand Island (City) has appealed from the judgment of the district court finding that the claimant, Clarence E. Fisher, was entitled to receive pension benefits under Neb. Rev. Stat. § 16-1039(1) (Reissue 1987) before reaching the age of 55 years.

The record shows that Fisher began employment by the City as a firefighter on February 1, 1965. On that date, the pension provided for firefighters in cities of the first class having a paid fire department was set out in Neb. Rev. Stat. § 35-201 (Cum. Supp. 1963) (Plan A). Effective August 7, 1965, a second pension plan was established for firefighters in first-class cities by 1965 Neb. Laws, L.B. 415, codified at Neb. Rev. Stat. §§ 35-204 to 35-215 (Cum. Supp. 1965) (Plan B). Both plans allowed firefighters to retire after 21 years of service and to receive pension payments after reaching the age of 55. Under both plans, pension payments were to be at least 50 percent of the salary the retiring firefighter received at the time he retired. Neb. Rev. Stat. § 35-216 (Cum. Supp. 1965) provided:

> Any firemen serving in the paid fire department of a city of the first class on August 7, 1965 may elect whether to become subject to the provisions of sections 35-204 to 35-214 or to remain subject to the provisions of sections 35-201 to 35-203.01. *Such election shall be made in writing not later than thirty days after August 7, 1965 and shall be irrevocable.*

(Emphasis supplied.)

On October 20, 1965, Fisher signed a form electing to be subject to the provisions of Plan B. Fisher testified in district court that Chief Simpson told him to either sign this document "or hit the door."

A third pension system became effective January 1, 1984. See Neb. Rev. Stat. §§ 16-1020 et seq. (Reissue 1987). Section 16-1039(1) provides:

> All cities of the first class having a paid fire department *shall* pension all firefighters . . . who were serving as such on August 7, 1965, *and who did not elect coverage under the provisions of sections 35-204 to 35-215 as they existed prior to January 1, 1984* [Plan B], whenever such firefighters shall have first served in such fire department for the period of twenty-one years and shall elect to retire from active service and go upon the retired list.

(Emphasis supplied.)

On February 1, 1986, Fisher completed 21 years of service and was 47 years old. When he resigned on September 29, 1987, Fisher was being paid a salary of $806.76 every 2 weeks. He had contributed $2,202.62 to the firefighters' pension fund since February 1, 1986.

On December 16, 1987, Fisher submitted a claim for pension benefits from the City and sought reimbursement for all contributions he had made to the pension plan after February 1, 1986, pursuant to §§ 16-1039 and 16-1040. The city council informed Fisher of the denial of his claim in a letter dated March 1, 1988, and Fisher appealed to the district court, pursuant to Neb. Rev. Stat. § 16-727 (Reissue 1987). The City's special appearance and subsequent motion for nonsuit were denied.

After a hearing, the district court entered judgment in favor of Fisher and against the City for pension benefits of $403.38 every 2 weeks from and after September 29, 1987, and entered judgment in favor of Fisher and against the City for the refund of $2,202.62 in pension contributions, plus prejudgment interest. The judgment was based on the court's finding that the election of benefits made by Fisher on October 20, 1965, was involuntary and not made within 30 days after August 7, 1965, and, therefore, was ineffective, invalid, and void. From that

judgment the City has appealed.

Fisher contends that § 16-1039(1) does not require that he be 55 years old before becoming eligible for pension payments. However, because we determine that the district court should have nonsuited Fisher for failure to file a petition in the district court, we do not consider the parties' arguments relating to § 16-1039.

The City contends that Fisher should have been nonsuited for failure to file a petition in the district court. Fisher timely appealed the denial of his claim, pursuant to the procedure set out in Neb. Rev. Stat. §§ 16-727 et seq. (Reissue 1987). Section 16-729 provides that such appeals "shall be entered on the docket of the court, tried, and determined as appeals from *justice courts.*"

As we have noted in previous cases, justice courts were abolished in this state by the passage of 1972 Neb. Laws, L.B. 1032. See, e.g., *Estate of Tetherow v. State,* 193 Neb. 150, 226 N.W.2d 116 (1975) (eminent domain proceeding); *Knoefler Honey Farms v. County of Sherman,* 193 Neb. 95, 225 N.W.2d 855 (1975) (appeal from county board of equalization), *overruled on other grounds, United Way of the Midlands v. Douglas County Board of Equalization,* 199 Neb. 323, 259 N.W.2d 270 (1977) (construction of Neb. Rev. Stat. § 77-202.04 (Reissue 1990)); *Singleton v. South Platte Nat. Resources Dist.,* 215 Neb. 504, 339 N.W.2d 751 (1983) (eminent domain proceeding). Section 16-729 clearly incorporates the former statutes relating to appeals from justice courts. In general, "where one statute refers to another and incorporates it, which incorporated statute is subsequently repealed, the statute repealed, having been incorporated as part of the one referring to it, remains in force so far as the adopting statute is concerned." *Estate of Tetherow v. State, supra* at 155, 226 N.W.2d at 119.

As stated above, Neb. Rev. Stat. §§ 27-1301 through 27-1315 (Reissue 1964), pertaining to justice courts, were repealed in 1972. Under § 27-1301, the perfection of an appeal from a justice court vested in the district court "jurisdiction of all the issues presented to the justice of the peace by the pleadings" or, in this case, to the city council by Fisher's notice of claim.

Section 27-1305 provided that "[t]he plaintiff in the court below shall be the plaintiff in the district court; and the parties shall proceed, in all respects, in the same manner as though the action had been originally instituted in such court." Sections 27-1305 and 27-1306 required that new pleadings be filed in the district court unless the parties stipulated to the contrary. See *Traill v. Ostermeier*, 140 Neb. 432, 300 N.W. 375 (1941). Specifically, the plaintiff was required to file a petition "as required in civil cases in the district court" within 50 days from and after the date of the rendition of the judgment in the court below. Finally, § 27-1307 provided that if the plaintiff in the action before the justice of the peace perfected an appeal to the district court but failed to file a petition within 50 days from the date of the judgment of the justice court, "the plaintiff *shall* become nonsuited" absent a showing of good cause. (Emphasis supplied.)

Although the filing of a petition within the 50-day period was not a jurisdictional step, see *Estate of Tetherow v. State, supra*, the parties did not stipulate that the case be tried without new pleadings, and the district court erred in failing to grant the City's motion for nonsuit because Fisher did not file a petition in the district court.

The judgment of the district court is reversed, and the cause is remanded with directions to dismiss Fisher's appeal. We make no determination on the merits concerning the parties' contentions relating to § 16-1039.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

WHITE, J., dissenting.

I dissent for the reasons set forth in my dissent in *School Dist. No. 17 and Westside Comm. Schools v. State*, 210 Neb. 762, 316 N.W.2d 767 (1982).

GRANT, J., joins in this dissent.

SHANAHAN, J., dissenting.

Not since "Lazarus, come forth" has there been such a summons for the dead to associate with the living, for this court raises from Nebraska's dead statutes a procedure, killed by repeal in 1972, which is today used to defeat Clarence Fisher's

action for pension benefits. The deceased procedure concerning an appeal from a justice of the peace court which departed statutory life nearly 20 years ago is, nonetheless, resurrected by judicial invocation of the "Lazarus Rule" expressed by the majority: "In general, 'where one statute refers to another and incorporates it, which incorporated statute is subsequently repealed, the statute repealed, having been incorporated as part of the one referring to it, remains in force so far as the adopting statute is concerned.' "

In Fisher's case, there are two statutes which existed before and during 1972 and, according to the majority, dispose of Fisher's appeal. First, there is Neb. Rev. Stat. § 16-727 (Reissue 1987), which authorizes a claimant's appeal from a city council's disallowance of a claim, an appeal that is commenced and perfected by the claimant's serving a notice of appeal on the city clerk and executing the appropriate surety bond for the appeal. Correspondingly, Neb. Rev. Stat. § 16-728 (Reissue 1987) allows a taxpayer to appeal from allowance of a claim against a city. The second crucial statute, according to the majority, is Neb. Rev. Stat. § 16-729 (Reissue 1987), which states:

> The [city] clerk, upon such appeal being taken, and being paid the proper fees therefor, including fees for filing the same in the district court, shall make out a transcript of the proceedings of the council, mayor, and other officers as relate to the presentation and allowance or disallowance of such claim, and shall file the same with the clerk of the district court within thirty days after the decision allowing or disallowing the claim and paying the proper commencement fees. Such appeal shall be entered on the docket of the court, tried, and determined as appeals from justice courts, and costs shall be awarded thereon in like manner. No appeal bond shall be required of the city by any court in the case of an appeal by the city, and judgment shall be stayed pending such appeal.

The majority applies the Lazarus Rule in view of 1972 Neb. Laws, L.B. 1032, legislation enacted almost 20 years ago for abolition of the justice of the peace courts in Nebraska. In 1972, L.B. 1032 was a massive overhaul of the judicial system of the

State of Nebraska. Motivation for L.B. 1032 was a desire to completely eliminate the state's justice of the peace courts in response to a presidential report which had thoroughly discredited the justice of the peace courts as a part of the judicial system throughout the United States. After amendment of the Nebraska Constitution to eliminate the justice of the peace courts, the Legislature reorganized the judicial system in view of the abolished justice of the peace courts in Nebraska. Resulting legislation comprised 287 separate sections, which were printed on 121 single-spaced pages. During floor debate on L.B. 1032, some of the Legislature acknowledged that the bill was so voluminous and extensive that errors and omissions were inevitable.

In *Leach v. Dept. of Motor Vehicles*, 213 Neb. 103, 327 N.W.2d 615 (1982), this court, recognizing the basic unfairness of the Lazarus Rule, held that the rule applies only when a designated statute was, by reference to that specific and, therefore, identified statute, incorporated into another statute. Therefore, in *Leach*, the court held that statutory incorporation of other legislation which is part of a general scheme of statutory law on a subject fails to restrict the incorporating statute to the material incorporated by reference, or, as the *Leach* court stated: "We believe that when a statute adopts the general law on a particular subject rather than a specific statute, it adopts not only the existing law but later legislation on the subject." 213 Neb. at 107, 327 N.W.2d at 618.

Section 16-729 (Reissue 1987), invoked by the majority as a basis for its decision, provided that appeals such as Fisher's "shall be entered on the docket of the [district] court, tried, and determined as appeals from justice courts, and costs shall be awarded thereon in like manner." Because § 16-729 made no specific reference to any particular statutory provision in the previous act pertaining to appeals from justice of the peace courts, § 16-729 incorporated only the general and composite law pertaining to the former justice of the peace courts and, therefore, adopted all later legislation abolishing justice of the peace courts and, consequently, eliminating the procedure for an appeal from those courts.

In fashioning and utilizing the Lazarus Rule, this court has

continually failed to explain why a generic statutory expression incorporated into another statute remains effectual in the incorporating and subsisting statute after repeal of the statute which was the source for the incorporation. Legal logic dictates that reference to a general subject in the incorporated statute also vanishes when the incorporated statute disappears by repeal. If general reference to appeals under the repealed justice of the peace act were deleted, as common sense requires, § 16-729 (Reissue 1987) would provide in relevant part: "Such appeal shall be entered on the docket of the [district] court, tried, and determined ~~as appeals from justice courts,~~ and costs shall be awarded[.] ~~thereon in like manner.~~" (Deletion indicated by lined-out language.) Fortunately for the future, it is precisely that deletion which an awakened Nebraska Legislature achieved by L.B. 1, introduced and passed during the 1991 session, legislation effective as of September 6, 1991, for amendment of § 16-729 in pertinent part regarding an appeal from a city council's action on a claim: "*Such appeal shall be entered on the docket of the court, tried, and determined and costs awarded thereon in the manner provided in sections 25-1901 to 25-1937.*" (Emphasis supplied.) § 16-729 (Supp. 1991).

Bearing in mind that Fisher's appeal to the district court was perfected on March 2, 1988, and that the district court's judgment awarding pension benefits to Fisher was entered on April 11, 1989, § 16-729 (Supp. 1991) had been effective for 3 months before this court heard the present appeal on December 6, 1991. Therefore, when this court heard the appeal in Fisher's case and, consequently, at the time of its decision in this appeal, § 16-729 no longer referred to the procedure applicable to an appeal from a decision in a justice of the peace court; rather, § 16-729, as amended in 1991, directs that appeals such as the Fisher case are governed by Neb. Rev. Stat. §§ 25-1901 to 25-1937 (Reissue 1989 & Supp. 1991), none of which authorize the Draconian action taken by this court to defeat Fisher's claim and deprive him of pension benefits recognized in the district court's judgment against the city. In *Lindgren v. School Dist. of Bridgeport*, 170 Neb. 279, 283, 102 N.W.2d 599, 604 (1960), which involved a question of timeliness for a bill of exceptions

on appeal, this court stated: " 'A litigant has no vested right in the mode of procedure, and an action commenced before an enactment changing the procedure in the court where the action is pending, after the enactment becomes effective, is properly triable under the changed method.' " (Quoting from *Lovelace v. Boatsman*, 113 Neb. 145, 202 N.W. 418 (1925).) See, also, *Hancock v. State ex rel. Real Estate Comm.*, 213 Neb. 807, 331 N.W.2d 526 (1983) (standard of review, as a procedural matter, is governed by statutes in effect when the appeal is heard); *Happy Hour, Inc. v. Nebraska Liquor Control Commission*, 186 Neb. 533, 184 N.W.2d 630 (1971); *Lovelace v. Boatsman*, *supra*.

Section § 25-1937 (Supp. 1991), mentioned in the 1991 amendment to § 16-729, states:

> When the Legislature enacts a law providing for an appeal without providing the procedure therefor, the procedure for appeal to the district court shall be the same as for appeals from the county court to the district court in civil actions. Trial in the district court shall be de novo upon the issues made up by the pleadings in district court. Appeals from the district court to the Court of Appeals shall be taken in the same manner provided by law for appeals from the district court in civil cases. This section shall not apply if the Administrative Procedure Act otherwise provides.

Use of § 25-1937, even before the 1991 amendment of § 16-729, accommodates the commonsense expectations of courts and lawyers who examined Nebraska's legislation to ascertain a procedure for an appeal in situations such as Fisher's, a procedure which allowed an orderly progression of appeals concerning a city council's action on a claim against the city. It is apparently that rational process which Fisher's lawyer actually pursued. In Fisher's case, however, experience and ordinary expectations betrayed the practitioner.

As matters now stand, the Lazarus Rule, utilized by the majority, arguably amounts to a denial of due process required by the Constitutions of the United States and Nebraska because

> due process requires the government to give notice to individuals of government actions which would deprive

those individuals of a constitutionally protected life, liberty, or property interest. When individual interests are adversely affected by legislative action, there is no notice issue, because publication of a ·statute is *normally* considered to put all individuals on notice of a change in the law of a jurisdiction.

(Emphasis supplied.) J. Nowak, R. Rotunda, & J. Young, Constitutional Law § 13.8 at 489 (3d ed. 1986).

The situation in Fisher's case is decidedly abnormal in view of reference to statutes which have been repealed for nearly 20 years and which exist only in dust-covered books in a dark, musty backroom of a law library, conducive to raising mushrooms, or which have been placed beneath an uneven table leg to stop wobbling.

However, since this court wishes to rely on the Lazarus Rule and act as a magisterial mortician, caring for a body of law long since demised, it is noteworthy that § 16-729 (Reissue 1987) is inapplicable to preclude Fisher's action, since § 16-729 supplies directives to a city clerk and the district court which hears an appeal. Regarding appeals brought under § 16-727 (claimant's appeal) or § 16-728 (taxpayer's appeal), § 16-729 directs that a city clerk, within 30 days after a city council's decision on a claim, must provide the district court with a transcript of the proceeding in question. Thereafter, the district court resolves the appeal. Also, § 16-729 exempts a city from an appeal bond. However, the all-important and pivotal point in Fisher's case is that while § 16-729 governs conduct of a city clerk and the district court, § 16-729 imposes no obligation on an appellant.

Nevertheless, Fisher's written claim, contained in the transcript filed with the district court, clearly expressed the nature of his claim for pension benefits and the relief sought. By supplying that information to the court, Fisher's claim qualified as a petition. See *In re Interest of L.D. et al.*, 224 Neb. 249, 258, 398 N.W.2d 91, 98 (1986): "A petition, as a pleading, is a plaintiff's or claimant's written statement of fact which invokes the jurisdiction of a court, sets out a cause of action, and seeks relief." See, also, *Paxton v. State*, 59 Neb. 460, 81 N.W. 383 (1899). " 'Proper pleading requires a petition to state in logical and legal form the facts which constitute the

plaintiff's cause of action, define the issues to which the defendant must respond at trial, and inform the court of the real matter in dispute.' " *League v. Vanice*, 221 Neb. 34, 43, 374 N.W.2d 849, 855 (1985). Accord, *Holden v. Urban*, 224 Neb. 472, 398 N.W.2d 699 (1987); *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186 (1984); *Russell v. First York Sav. Co.*, 218 Neb. 112, 352 N.W.2d 871 (1984).

Moreover, even in an appeal from a justice of the peace court, absence of a petition on appeal, under the now defunct procedure for an appeal from a justice of the peace court, did not automatically authorize nonsuit or dismissal of an appellant's action in the district court; rather, an appellant was permitted to show "good cause" for the absence of a petition filed on appeal. See Neb. Rev. Stat. § 27-1307 (Reissue 1964) (repealed 1972). See, also, *City of Seward v. Gruntorad*, 158 Neb. 143, 62 N.W.2d 537 (1954) (pursuant to § 27-1307, a district court must determine whether good cause has been shown for the absence of a petition on appeal); *In re Estate of Meyers*, 152 Neb. 165, 40 N.W.2d 536 (1950). In any event, if the procedure for an appeal from a justice of the peace court were applicable, as espoused by the majority, Fisher is entitled to the opportunity for showing good cause regarding an absent petition, assuming that there is such an absence. Yet, the majority's decision deprives Fisher of the opportunity to show good cause, a right granted under the very law used by the majority to deny Fisher's pension benefits.

Because L.B. 1032 in 1972 repealed the statutory provisions for an appeal from the former justice of the peace courts and resulted in an absence of a procedure for an appeal from a city council's disallowance of a claim, and, moreover, since the 1991 amendment of § 16-729 has removed reference to an extinct procedure relative to justice of the peace courts, the procedure set forth in § 25-1937 governed Fisher's appeal. Under the circumstances, the City of Grand Island was not entitled to dismissal of Fisher's action in the district court. For that reason, the district court's judgment should have been affirmed.

Consequently, while the Legislature has commendably removed the living dead from § 16-729, nevertheless, as far as the dead justice of the peace procedure is concerned, its ghost

walks in this court's decisions.

GRANT, J., joins in this dissent.