SANITARY AND IMPROVEMENT DISTRICT NO. 1 OF FILLMORE COUNTY, NEBRASKA, A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLANT, V. NEBRASKA PUBLIC POWER DISTRICT, A PUBLIC CORPORATION AND POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLEE.

573 N.W.2d 460

Filed February 6, 1998.    Nos. S-96-385, S-96-386.

918

Donald Pepperl, of Pepperl, McMahon-Boies, and Jerry D. Anderson for appellant.

James A. Eske, of Barlow, Johnson, Flodman, Sutter, Guenzel & Eske, and Bonnie J. Hostetler for appellee.

CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

STEPHAN, J.
These consolidated appeals present a single question of law: Does a public power district have the power of eminent domain to acquire right-of-way over lands owned by a sanitary and

improvement district for the purpose of constructing transmission lines and related structures? We hold that such power is conferred by Neb. Rev. Stat. § 70-301 (Reissue 1996) and, therefore, affirm the judgments of the district court for Fillmore County as modified, and remand the causes for further proceedings.

## BACKGROUND

Appellee Nebraska Public Power District (NPPD) is a public corporation and political subdivision of the State of Nebraska. See Neb. Rev. Stat. § 70-601 et seq. (Reissue 1996). Appellant Sanitary and Improvement District No. 1 of Fillmore County, Nebraska (S.I.D. 1), is a public corporation and political subdivision of the State of Nebraska. See, Neb. Rev. Stat. § 31-727 et seq. (Reissue 1993); *S.I.D. No. 95 v. City of Omaha*, 221 Neb. 272, 376 N.W.2d 767 (1985). Sanitary and improvement districts have been characterized as quasi-municipal corporations. See *Rexroad, Inc. v. S.I.D. No. 66*, 222 Neb. 618, 386 N.W.2d 433 (1986).

In 1993, NPPD obtained approval from the Nebraska Power Review Board to construct and operate a 345,000-volt electric transmission line, known as the Pauline-Moore line, extending from a substation south of Hastings, Nebraska, to NPPD's Sheldon Power Plant north of Hallam, Nebraska, a distance of approximately 96 miles. In 1995, NPPD commenced separate condemnation actions in the county court for Fillmore County, Nebraska, for the purpose of acquiring "easement right-of-way" over two irregular tracts of land in Fillmore County for the construction of a portion of the Pauline-Moore line. NPPD contended that it possessed the power of eminent domain to acquire this right-of-way pursuant to §§ 70-301 and 70-670. NPPD alleged that S.I.D. 1 claimed an interest in the land by reason of certain quitclaim deeds recorded in 1994. Court-appointed appraisers awarded damages to S.I.D. 1 in the amount of $7,724 for one parcel and $2,974 for the other. S.I.D. 1 appealed both awards to the district court for Fillmore County. See Neb. Rev. Stat. § 76-715 (Reissue 1996).

In its amended petitions on appeal, S.I.D. 1 alleged that it owned the parcels of land which are the subject of the condemnation and asserted several defenses which are referred to in its

petitions as separately numbered "causes of action." In the third cause of action of each amended petition, S.I.D. 1 alleged that the subject parcels were public property over which NPPD had no statutory power of eminent domain and prayed that the court declare the attempted condemnation void and quiet title to the property in its name. In its answers, NPPD denied these allegations and reasserted its authority to acquire the right-of-way by condemnation under §§ 70-301 and 70-670. The district court consolidated the cases for separate trial on this issue, reserving for later determination other issues, including the adequacy of damages awarded by the appraisers.

On April 5, 1996, following a bench trial at which no testimony was offered and exhibits were received without objection, the district court entered an order finding that NPPD "does have the authority under Neb. Rev. Stat. Sections 70-301 and 70-670 to acquire an easement over [property owned by S.I.D. 1] through the exercise of the power of eminent domain" and dismissing the third cause of action in each case. S.I.D. 1 filed a timely notice of appeal in each case. Pursuant to our authority to regulate the caseloads of the Nebraska Court of Appeals and this court, we removed the cases to our docket on our own motion and ordered them consolidated for argument and disposition.

## ASSIGNMENT OF ERROR
Restated, S.I.D. 1 contends that in each of these cases the district court erred in determining that NPPD possessed statutory power of eminent domain to acquire right-of-way over property to which S.I.D. 1 held title.

## SCOPE OF REVIEW
Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Bank of Papillion v. Nguyen*, 252 Neb. 926, 567 N.W.2d 166 (1997); *State ex rel. City of Elkhorn v. Haney*, 252 Neb. 788, 566 N.W.2d 771 (1997); *Brown v. Wilson*, 252 Neb. 782, 567 N.W.2d 124 (1997).

## ANALYSIS
While these cases were pending before the Court of Appeals, NPPD filed motions to dismiss for lack of jurisdiction pursuant

to Neb. Ct. R. of Prac. 7B(1) (rev. 1996), based upon its contention that the orders of the district court were not final and appealable because of the pendency of other issues in each case. The motions were overruled without prejudice to briefing and argument on the subject of jurisdiction. Because the jurisdictional issue was raised during oral argument, we examine it here pursuant to our power and duty to determine whether appellate jurisdiction exists. See *City of Lincoln v. Twin Platte NRD*, 250 Neb. 452, 551 N.W.2d 6 (1996).

The three types of orders which may be reviewed on appeal are (1) an order which affects a substantial right in an action and which in effect determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered. Neb. Rev. Stat. § 25-1902 (Reissue 1995); *State v. Gibbs, ante* p. 241, 570 N.W.2d 326 (1997); *Richardson v. Griffiths,* 251 Neb. 825, 560 N.W.2d 430 (1997); *Tess v. Lawyers Title Ins. Corp.,* 251 Neb. 501, 557 N.W.2d 696 (1997). Special proceedings entail civil statutory remedies not encompassed in chapter 25 of the Nebraska Revised Statutes. *Hull v. Aetna Ins. Co.,* 247 Neb. 713, 529 N.W.2d 783 (1995). A condemnation action is a special proceeding within the meaning of § 25-1902. See *Webber v. City of Scottsbluff,* 155 Neb. 48, 50 N.W.2d 533 (1951).

In a special proceeding, an order is final and appealable if it affects a substantial right of the aggrieved party. *City of Lincoln v. Twin Platte NRD, supra; Jarrett v. Eichler,* 244 Neb. 310, 506 N.W.2d 682 (1993). A substantial right is an essential legal right, not a mere technical right. A substantial right is affected if the order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which the appeal is taken. *Currie v. Chief School Bus Serv.,* 250 Neb. 872, 553 N.W.2d 469 (1996); *Jarrett v. Eichler, supra.* In this case, the orders from which the appeals are taken eliminated what S.I.D. 1 alleged to be a complete defense to condemnation, and thus affected a substantial right. Therefore, we conclude that we have jurisdiction to hear and determine these appeals under § 25-1902.

Turning to the merits, we begin with the established principle that the power of eminent domain may be exercised only on the occasion and in the mode or manner prescribed by the Legislature. *Engelhaupt v. Village of Butte*, 248 Neb. 827, 539 N.W.2d 430 (1995). Statutes conferring and circumscribing the power of eminent domain must be strictly construed. *Id.* We applied these principles in *State v. Boone County*, 78 Neb. 271, 110 N.W. 629 (1907), in resolving the issue of whether a county could exercise the power of eminent domain to acquire school lands for purposes of building a public road. Noting that the Legislature had specifically authorized the condemnation of public lands for certain purposes, including construction of irrigation systems and railroads, we found no similar statutory authority for the exercise of eminent domain to acquire school lands for road construction.

In determining whether §§ 70-301 and 70-670 grant NPPD the power of eminent domain to acquire right-of-way over lands owned by S.I.D. 1, we must apply familiar principles of statutory interpretation. In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *County of Sherman v. Evans*, 252 Neb. 612, 564 N.W.2d 256 (1997); *In re Estate of Nuesch*, 252 Neb. 610, 567 N.W.2d 113 (1997); *Piska v. Nebraska Dept. of Soc. Servs.*, 252 Neb. 589, 567 N.W.2d 544 (1997). Specifically, a court must attempt to give effect to all of its parts, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless; it is not within the province of a court to read anything plain, direct, and unambiguous out of a statute. *Omaha World-Herald v. Dernier, ante* p. 215, 570 N.W.2d 508 (1997); *Loup City Pub. Sch. v. Nebraska Dept. of Rev.*, 252 Neb. 387, 562 N.W.2d 551 (1997); *In re Interest of Rondell B.*, 249 Neb. 928, 546 N.W.2d 801 (1996).

In general, a court will construe statutes relating to the same subject matter together so as to maintain a consistent and sensible scheme. See, *State ex rel. City of Elkhorn v. Haney*, 252 Neb. 788, 566 N.W.2d 771 (1997); *In re Interest of Brandy M. et al.*, 250 Neb. 510, 550 N.W.2d 17 (1996); *Solar Motors v.*

*First Nat. Bank of Chadron*, 249 Neb. 758, 545 N.W.2d 714 (1996). However, to the extent there is conflict between two statutes on the same subject, the specific statute controls over the general statute. *SID No. 2 v. County of Stanton*, 252 Neb. 731, 567 N.W.2d 115 (1997); *Village of Winside v. Jackson*, 250 Neb. 851, 553 N.W.2d 476 (1996).

With these principles in mind, we examine the language of the two statutes at issue in these cases. Section 70-301 provides:

> Any public power district, corporation, or municipality that is now or may hereafter be engaged in the generation or transmission, or both, of electric energy for sale to the public for light and power purposes or the production or distribution, or both, of ethanol for use as fuel may acquire right-of-way over and upon lands, except railroad right-of-way and depot grounds, for the construction of pole lines or underground lines necessary for the conduct of such business and for the placing of all poles and constructions for the necessary adjuncts thereto, in the same manner as railroad corporations may acquire right-of-way for the construction of railroads. Such district, corporation, or municipality shall give public notice of the proposed location of such pole lines or underground lines with a voltage capacity of thirty-four thousand five hundred volts or more which involves the acquisition of rights or interests in more than ten separately owned tracts by causing to be published a map showing the proposed line route in a legal newspaper of general circulation within the county where such line is to be constructed at least thirty days before negotiating with any person, firm, or corporation to acquire easements or property for such purposes and shall consider all objections which may be filed to such location. After securing approval from the Public Service Commission and having complied with sections 86-301 to 86-331, such public power districts, corporations, and municipalities shall have the right to condemn a right-of-way over and across railroad right-of-way and depot grounds for the purpose of crossing the same. The procedure to condemn property shall be exercised in the manner set forth in sections 76-704 to 76-724.

Section 70-670 provides:

> In addition to any other rights and powers hereinabove conferred upon any district organized under or subject to Chapter 70, article 6, each such district shall have and exercise the power of eminent domain to acquire from any person, firm, association, or private corporation any and all property owned, used, or operated, or useful for operation, in the generation, transmission, or distribution of electrical energy, including an existing electric utility system or any part thereof. The procedure to condemn property shall be exercised in the manner set forth in Chapter 76, article 7. In the case of the acquisition through the exercise of the power of eminent domain of an existing electric utility system or part thereof, the Attorney General shall, upon request of any district, represent such district in the institution and prosecution of condemnation proceedings. After acquisition of an existing electric utility system through the exercise of the power of eminent domain, the district shall reimburse the state for all costs and expenses incurred in the condemnation proceedings by the Attorney General.

S.I.D. 1 contends that all power of eminent domain possessed by a public power district is conferred by § 70-670 and that § 70-301 merely specifies the procedure to be followed in exercising that power. This position is inconsistent with the fact that § 70-670 makes no reference to § 70-301, but specifically provides that the power of eminent domain which it confers is to be exercised pursuant to the condemnation procedure set forth in chapter 76, article 7, of Nebraska Revised Statutes. Similarly, § 70-301 makes no reference to § 70-670, but provides that the procedure to condemn property shall be that set forth in Neb. Rev. Stat. §§ 76-704 to 76-724 (Reissue 1996). The position urged by S.I.D. 1 would require us to regard § 70-301 as redundant or superfluous, contrary to our principles of statutory interpretation.

Reading both statutes together and giving effect to all of their provisions, we interpret §§ 70-301 and 70-670 as granting separate and distinct powers of eminent domain to public power districts. Section 70-301 refers specifically and exclusively to

the acquisition of "right-of-way over and upon lands" for the purpose of constructing overhead or underground transmission lines. It does not permit the acquisition of any other interest in land for any other purpose. In contrast, § 70-670 refers to a broader power of eminent domain, permitting a public power district to acquire "any and all property" to be utilized in the "generation, transmission, or distribution of electrical energy." This power is specifically designated as being "[i]n addition to any other rights and powers" conferred by preceding statutory provisions. Therefore, we conclude that the authority of a public power district to acquire right-of-way for transmission lines by eminent domain is conferred by § 70-301; its authority to acquire land for other purposes is governed by § 70-670.

These cases are limited to condemnation of right-of-way, and therefore, we must determine whether the power of eminent domain conferred by § 70-301 extends to public lands. Again, we examine the statutory language used by the Legislature. Section 70-301 authorizes acquisition of right-of-way "over and upon lands," with the specific exception of certain railroad property which may not be condemned without prior approval of the Public Service Commission. The statute uses the phrase "person, firm, or corporation" in reference to potential condemnees. Had the Legislature intended to preclude condemnation of right-of-way over lands owned by public corporations, it could have either included a specific exception, as it did for railroad property, or limited the power of eminent domain to acquisition of land owned by *private* corporations, as it did in § 70-670. The absence of any such exception or limitation in § 70-301 suggests that none was intended.

Another indication of legislative intent can be derived from the language of § 70-301 which provides that the authority to acquire right-of-way for construction of powerlines is to be exercised "in the same manner as railroad corporations may acquire right-of-way for construction of railroads." When § 70-301 was last amended in 1986, the power of a railroad to acquire right-of-way by eminent domain was set forth in Neb. Rev. Stat. § 74-304 (Reissue 1990), which permitted a railroad to appropriate so much of any "road, street, alley, or public way or ground of any kind, or any part thereof" necessary for loca-

tion of any part of the railroad. In *State v. Boone County*, 78 Neb. 271, 110 N.W. 629 (1907), we recognized that similar statutory language then contained in Comp. Stat. ch. 16, § 83 (1905) permitted a railroad to use the power of eminent domain to acquire right-of-way over public lands. When legislation is enacted which makes related preexisting law applicable thereto, it is presumed that the Legislature acted with full knowledge of the preexisting law and judicial decisions of the Supreme Court construing and applying it. *School Dist. No. 17 and Westside Comm. Schools v. State*, 210 Neb. 762, 316 N.W.2d 767 (1982); *State v. Kock*, 207 Neb. 731, 300 N.W.2d 824 (1981). Thus, the statutory provision that public power districts may acquire right-of-way in the same manner as railroads reflects legislative intent that a public power district may exercise the power of eminent domain to acquire right-of-way over public lands. This conclusion is not affected by the repeal of § 74-304 in 1994. Where one statute refers to another and the latter is subsequently repealed, the statute repealed, absent contrary legislative intent, becomes a part of the one making the reference and remains in force so far as the adopting statute is concerned. *Fisher v. City of Grand Island*, 239 Neb. 929, 479 N.W.2d 772 (1992); *School Dist. No. 17 and Westside Comm. Schools v. State, supra.*

## CONCLUSION

The district court correctly found that NPPD has statutory authority to exercise the power of eminent domain to acquire right-of-way over lands owned by S.I.D. 1. We disagree with the district court only in that we find that this power is derived solely from § 70-301. We, therefore, affirm the judgments of the district court as modified and remand these causes for further proceedings because other issues remain unresolved.

AFFIRMED AS MODIFIED, AND CAUSES
REMANDED FOR FURTHER PROCEEDINGS.

WHITE, C.J., participating on briefs.