REQUESTED BY: Senator Gene Tyson Nebraska State Legislature
You have requested our opinion concerning the authority of an "acquisition agency" established under the Nebraska Public Safety Wireless Communication System Act, Neb. Rev. Stat. §§ 86-401 to 86-419
(Cum. Supp. 2002) [the "Act"], to exercise eminent domain power to acquire real or personal property. The Act provides a mechanism for the establishment of a statewide public safety communication system. To establish such a system, the Act permits the creation of two separate joint entities. The first joint entity is an "acquisition agency" established pursuant to the Interlocal Cooperation Act. Neb. Rev. Stat. §§ 86-404 and 86-410(1) (Cum. Supp. 2002).[1] The "acquisition agency" is empowered "to acquire real and personal property for use in connection with such system and shall construct any facilities necessary to implement such system. . . ." Neb. Rev. Stat. § 86-410(1) (Cum. Supp. 2002). "An acquisition agency may acquire real and personal property and may construct facilities based upon (a) the implementation plan, (b) the ongoing advice and assistance of the board and the division, and (c) the determinations made by the members of the governing body of the acquisition agency." Neb. Rev. Stat. § 86-414(1) (Cum. Supp. 2002).[2] The second joint entity is an "alliance" formed under the Interlocal Cooperation Act. Neb. Rev. Stat. §§ 86-405 and 86-410(2) (Cum. Supp. 2002). The "alliance" is authorized "to operate, maintain, and manage the system." Neb. Rev. Stat. § 86-410(2) (Cum. Supp. 2002). "An alliance may have all powers authorized under the Nebraska Public Safety Wireless Communication System Act and the Interlocal Cooperation Act and may operate, maintain, and manage the system pursuant to an operating agreement entered into by the acquisition agency and the alliance." Neb. Rev. Stat § 86-414(2) (Cum. Supp. 2002). Your specific question concerns whether an "acquisition agency" has the authority to use the power of eminent domain to acquire real or personal property. You indicate you are considering amendatory legislation if we conclude an "acquisition agency" lacks eminent domain power under existing law.
[1] The Interlocal Cooperation Act is found at Neb. Rev. Stat. §§ 13-801 to 13-827 (1997 and Cum. Supp. 2002).
[2] The "board" referred to in § 86-414(1) is the Public Safety Wireless Communication Advisory Board created by Neb. Rev. Stat. 86-419
(Cum. Supp. 2002), and the "division" referenced in § 86-414(1) is "the division of communications of the Nebraska Department of Administrative Services." Neb. Rev. Stat. §§ 86-406 and 86-407 (Cum. Supp. 2002).
"Eminent domain is defined generally as the power of the nation or a state, or authorized public agency, to take or to authorize the taking of private property for a public use without the owner's consent, conditioned upon the payment of just compensation." Krambeck v. City of Gretna,198 Neb. 608, 614, 254 N.W.2d 691, 694 (1977) (citing 26 Am. Jur.2d Eminent Domain § 1). Eminent domain power "belongs to the state and may be exercised either directly by the Legislature or through the medium of corporate bodies, which includes municipalities, or of individual enterprises to whom it sees fit to delegate such power in the public's interest." In re Condemnation of Blocks 13, 14, 15, Koehler's Subdivision, City of Grand Island, 144 Neb. 67, 69, 12 N.W.2d 540, 541
(1943). "[T]he power of eminent domain may be exercised only on the occasion and in the mode or manner prescribed by the Legislature." Sanitary and Improvement Dist. No. 1 v. Nebraska Public Power Dist.,253 Neb. 917, 922, 573 N.W.2d 460, 465 (1998); accord Engelhaupt v. Village of Butte, 248 Neb. 827, 539 N.W.2d 430 (1995); Krauter v. Lower Big Blue Natural Resources Dist., 199 Neb. 431, 259 N.W.2d 472 (1977). "Statutes conferring and circumscribing the power of eminent domain must be strictly construed." Sanitary and Improvement Dist. No. 1 v. Nebraska Public Power Dist., 253 Neb. at 922, 573 N.W.2d at 465.
Recently, in Op. Att'y Gen. No. 03008 (April 9, 2003), we addressed whether joint entities organized under the Act were required to engage in competitive bidding in performing their duties regarding creation of a statewide public safety communication system. Addressing this issue, we observed that nothing in the Act or the Interlocal Cooperation Act "specifically require[d] competitive bidding with respect to the duties of either the Acquisition Agency or the Alliance." Id. at 3. While noting that § 13-804(5) of the Interlocal Cooperation Act provided that no agreement under that Act relieved any public agency of an obligation or responsibility imposed upon it by law, except to the extent that such an obligation was performed by the joint agency created under the Interlocal Cooperation Act, we concluded "that § 13-804(5) [was] inapplicable to the circumstances surrounding your question because the authority of the Alliance to engage in its activities grows out of the Nebraska Public Safety Wireless Communication System Act itself, and not out of the particular statutes pertinent to each of the individual participants in the Alliance." Id. We thus concluded the Alliance was not required to engage in competitive bidding under the Act. Id. at 3-4.
A review of the Act reveals no specific grant of eminent domain power to an "acquisition agency." The Act provides that an "acquisition agency" may "acquire any real and personal property and construct facilities to be made available for use in connection with the system." Neb. Rev. Stat. § 86-404 (Cum. Supp. 2002); see also Neb. Rev. Stat. § 86-410(1) (Cum. Supp. 2002) ("An acquisition agency shall acquire real and personal property for use in connection with such system and shall construct any facilities necessary to implement such system."). The Act allows an "acquisition agency" to acquire real and personal property to be used as part of the system, but contains no specific language granting eminent domain power to an "acquisition agency." In the absence of a clear delegation of the power of eminent domain to an "acquisition agency," it appears that the Act does not presently authorize an "acquisition agency" to exercise eminent domain power.
It could be argued that, since an "acquisition agency" is a joint entity created under the Interlocal Cooperation Act, it is empowered to exercise eminent domain power under § 13-804 of the Interlocal Cooperation Act. Subsection 1 of § 13-804 provides, in part: "Any power or powers, privileges, or authority exercised or capable of exercise by a public agency of this state may be exercised and enjoyed jointly with any other public agency of this state. . . ." Neb. Rev. Stat. §13-804(1) (Cum. Supp. 2002). As various entities which can form an "acquisition agency" as a "joint entity" under the Interlocal Cooperation Act may individually possess eminent domain power for particular purposes, this broad language could perhaps be construed to allow an "acquisition agency" to exercise eminent domain power.
We do not believe any eminent domain power possessed by individual political subdivisions which form an "acquisition agency" warrants concluding that an "acquisition agency" may exercise the power of eminent domain in connection with creating or establishing a system under the Act. Consistent with the reasoning in our earlier opinion, we conclude that the powers which may be exercised by an "acquisition agency" are those set forth in the Act, and not those which individual members of an "acquisition agency" may exercise independent of the Act. See Op. Att'y Gen. No. 03008 at 3.[3]
This result is supported by the Supreme Court of Oklahoma's decision in Rollow v. West, 479 P.2d 962 (Okla. 1971). The question presented in Rollow was whether the Southern Oklahoma Development Association ["SODA"], a voluntary association organized under Oklahoma's Interlocal Cooperation Act consisting of seven counties and some cities and towns within the counties, had authority to exercise the power of eminent domain to condemn buildings to be used for a parking lot. The owners of the land SODA sought to condemn asserted the Interlocal Cooperation Act did not authorize SODA to exercise eminent domain power. Id. at 963. Agreeing with the landowners' contention that SODA lacked such power, the Oklahoma court stated:
 Our inquiry need extend no further than to determine whether SODA is granted the power of eminent domain under the Interlocal Cooperation Act. We hold that a separate legal or administrative entity, created by agreement of the signatory local governmental units or public agencies, is not vested with the power of eminent domain by the Interlocal Cooperation Act.
 The Act by its terms contemplates cooperation or joint exercise between the various governmental entities of activities permitted of the individual entities. The Act does not create new powers to be exercised independently by the legal or administrative agency. We find no clear legislative authority in the Interlocal Cooperation Act to justify the taking of property in derogation of the rights of citizens.
 It follows that the power of eminent domain is not granted to SODA by the Act. The mere statutory authorization for voluntary associations of public agencies created by written agreement is not a specific enactment by the Legislature designating the occasions, the modes, and the agencies by and through which the fundamental power to exercise the right of eminent domain may be placed in operation.
Id. (emphasis in original).
The provisions of the Oklahoma Interlocal Cooperation Act outlining the powers of public agencies entering into agreements for the joint exercise of powers are virtually identical to those contained in Nebraska's Interlocal Cooperation Act. Compare 74 Okla. Stat. Ann. § 1004[74-1004] (2002) with Neb. Rev. Stat. § 13-804 (Cum. Supp. 2002). Based on the reasoning in Rollow, we believe that the authority for public agencies to enter into agreements under the Interlocal Cooperation Act does not constitute a specific enactment delegating the exercise of the power of "eminent domain" to a "joint entity" created pursuant to the Interlocal Cooperation Act.
In sum, we conclude that, under existing law, an "acquisition agency" created under the Act is not authorized to exercise the power of eminent domain to acquire real or personal property to create a statewide public safety wireless communication system. Accordingly, amendatory legislation specifically granting eminent domain power to an "acquisition agency" for this purpose, which outlines the mode or manner in which such power may be exercised, is required before an "acquisition agency" may use the power of eminent domain to acquire real or personal property to establish a system under the Act.
Sincerely,
 JON BRUNING Attorney General
 L. Jay Bartel Assistant Attorney General
Approved:
_________________________________ Attorney General pc: Patrick O'Donnell Clerk of the Lesislature
[3] It is our understanding that, at present, the "acquisition agency" agreement establishing the "Public Safety Communications Agency of Nebraska" ["PSCAN"] has been executed by the following member municipalities, counties, power districts, and/or fire districts: Nebraska City, Norfolk, Hadar Fire District, and Richardson County . The history of the Act indicates the State is precluded from participating as a party to any agreement to form an "acquisition agency" because an "acquisition agency" may engage in debt financing through the issuance of bonds. Committee Records on LB 1211, 97th Leg., 2nd Sess. 11-13, 16-18 (February 4, 2002); Floor Debate on LB 1211, 97th Leg., 2nd Sess., 11000, 11010 (March 6, 2002). The intent to exclude the State or its agencies from being parties to an "acquisition agency" agreement stems from the constitutional limit on the State incurring indebtedness. Neb. Const. art. XIII, § 1. Depending on the nature of the particular public agencies or political subdivisions which may enter into an agreement to form an "acquisition agency", the limits on the use of the power of eminent domain imposed by statute on various agencies or subdivisions further demonstrates these specific powers cannot be exercised by an "acquisition agency" to obtain property for a public safety communications system. See, e.g., Neb. Rev. Stat. § 3-203
(1997) (Granting municipality eminent domain power to acquire property for airport purposes); Neb. Rev. Stat. § 14-366 (1997) (Granting metropolitan class city eminent domain power to acquire property for, inter alia, streets, parks, recreational uses, as well as for waterworks, gas plants or other municipal utility purposes); Neb. Rev. Stat. § 15-229 (1997) (Authorizing primary class cities to use eminent domain power to acquire real or personal property for "public purpose".); Neb. Rev. Stat. § 23-108 (1997) (Granting county eminent domain power to acquire land for road purposes); Neb. Rev. Stat. §70-301 (1996) (Authorizing public power districts, corporations, or municipalities power to obtain right-of-way for construction of pole lines or underground lines necessary for the conduct of electric business); Neb. Rev. Stat. § 86-591 (Cum. Supp. 2002) (Authorizing counties to use eminent domain power to establish public telephone systems).